2006 ND 10

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Randy BERTRAM, Defendant and Appellant.**

Nos. 20050035, 20050036, 20050037.

Supreme Court of North Dakota.

Jan. 31, 2006.

Rehearing Denied Feb. 23, 2006.

Nicole Ellan Foster, State's Attorney, Williston, N.D., for plaintiff and appellee.

Eric P. Baumann (on brief), Slorby Law Office, Minot, N.D., for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Randy Bertram ("Randy") appeals from a district court judgment entered upon jury verdicts finding him guilty of violating a disorderly conduct restraining order, criminal trespass, and contact by bodily fluids. We affirm the convictions.

I

[¶ 2] On January 16, 2004, Joan Bertram ("Joan") and Randy were divorced by a default divorce decree that awarded Joan the parties' residence. On January 29, 2004, Joan obtained a temporary disorderly conduct restraining order against Randy, and the Williams County Sheriff's Department served that order on him. The order prohibited Randy from having any contact with Joan except through an attorney and from coming within 100 feet of her residence or place of employment. At about 8:00 a.m. on February 8, 2004, Randy entered Joan's residence through a window and spoke with her. According to Randy, he was attempting to get business and tax records for his construction business, which were in an office in the residence.

[¶ 3] The State charged Randy with violating the disorderly conduct restraining order under N.D.C.C. § 12.1–31.2–01 for allegedly entering Joan's home and speaking to her and with criminal trespass under N.D.C.C. § 12.1–22–03(1) for allegedly entering her home, knowing he was not licensed or privileged to be in the home. While Randy was in custody on those charges, he allegedly spit on Gaylen Anderson, a correctional officer with the Williams County Sheriff's Department, while Officer Anderson was attempting to administer medications to him. The State charged Randy with contact by bodily fluids under N.D.C.C. § 12.1–17–11(1)(b) and (3) for allegedly spitting on Officer Anderson, while Anderson was acting in the scope of his duties. In September 2004, a jury convicted Randy of criminal trespass and of violating the disorderly conduct restraining order, and in October 2004, a second jury convicted him of contact by bodily fluids.

II

[¶ 4] Randy argues the district court erred in denying his motion for judg-

ment of acquittal based on insufficiency of the evidence.

[¶ 5] In *State v. Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819 (citations omitted), we outlined our standard of review for challenges to sufficiency of the evidence:

In an appeal challenging the sufficiency of the evidence, we look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the ·evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses. A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts. A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt. Moreover, a jury may find a defendant guilty even though evidence exists which, if believed, could lead to a not guilty verdict.

[¶ 6] A person is guilty of criminal trespass if, knowing he is not licensed or privileged to do so, he enters or remains in a dwelling. N.D.C.C. § 12.1–22–03(1). "[P]rivilege is the freedom or authority to act and to use property.'" *State v. Morales*, 2004 ND 10, ¶ 10, 673 N.W.2d 250 (quoting *State v. Ronne*, 458 N.W.2d 294, 297 (N.D.1990)). A person is privileged if he naturally may be expected to be on the premises often and in the natural course of his duties or habits. *Morales*, at ¶ 10. A person is licensed to be on property if the entry was consensual. *State v. Purdy*, 491 N.W.2d 402, 410 (N.D.1992).

[¶ 7] A person acts knowingly if "when he engages in the conduct, he knows or has a firm belief, unaccompanied by a substantial doubt, that he is doing so, whether or not it is his purpose to do so." N.D.C.C. § 12.1–02–02(1)(b). A person's knowledge need not be absolute, but must be only a firm belief unaccompanied by a substantial doubt. *State v. Kaufman*, 310 N.W.2d 709, 713 (N.D.1981). A person's knowledge depends on all the surrounding facts and circumstances and is a factual question that may be established by circumstantial evidence. *Id.* at 713–14.

[¶ 8] Randy argues he was not guilty of criminal trespass because he entered a dwelling he had resided in for the last 11 to 14 years. He argues the default divorce judgment, which gave possession of the dwelling to Joan, was an illegal judgment and was subsequently determined to be invalid. He claims he entered the house to retrieve property that even the illegal judgment recognized as his. He argues that before he entered the house, he had been told by three lawyers that he could enter it, and based on that legal advice, he claims he believed he was entitled to enter the house. He asserts the State failed to prove beyond a reasonable doubt that he was not in fact both licensed and privileged to enter the house, much less that he actually knew he was not licensed or privileged.

[¶ 9] Randy admitted he received the divorce decree, which awarded Joan the parties' home, before February 8, 2004. Joan testified she informed Randy he could not come to the house without her approval, and Randy admitted he had been told not to come to the house without her approval. Joan testified she had changed the locks on the house. According to Ran-

dy, he attempted to call Joan on his cell phone from her garage before he entered her house through a window, but there was no answer. Joan testified she did not receive a phone call from Randy on the morning of February 8, 2004, but awoke and discovered Randy in her residence. She testified she called the police and she found an opened window and a crowbar in the television room in her house. Randy admitted he entered the house through the window.

[¶ 10] Williston Police Officer Darren Cody testified he arrived at Joan's house and discovered Randy inside. Officer Cody testified Randy took off running through the house, shutting doors behind him and eventually fled to the garage where he nailed the door shut. Officer Cody testified he saw a crowbar in the television room and an open window with footprints in snow outside the window.

[¶ 11] We conclude the evidence and reasonable inferences from the evidence, viewed in the light most favorable to the verdict, are such that a rational fact finder could find Randy knew he was not licensed or privileged to enter Joan's house. We reject Randy's claim that he was entitled to rely on the advice of attorneys. Legal advice generally is not a defense to a criminal prosecution, but in some circumstances may be used to negate the requisite mens rea. *State v. Thorstad*, 261 N.W.2d 899, 904–06 (N.D.1978). *See generally* 21 Am.Jur.2d *Criminal Law* § 156 (1998). Here, Randy was not precluded from testifying that he relied upon the legal advice of attorneys in entering the house, and the jury nevertheless assessed all the surrounding facts and circumstances and determined he knew he was not licensed or privileged to be on the premises. We also reject Randy's claim he was entitled to be in the house because the default divorce judgment was later reopened. In other contexts, this Court has said an invalid order must be obeyed until stayed or reversed by orderly review. *State v. Zahn*, 1997 ND 65, ¶ 14, 562 N.W.2d 737. The divorce decree had not been reopened when Randy entered the house, and the later proceedings on that judgment do not, as a matter of law, relieve him from criminal liability for criminal trespass.

[¶ 12] In assessing claims about the sufficiency of the evidence, we do not weigh conflicting evidence or judge the credibility of the witnesses. *Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819. Under our standard of review of jury verdicts, we conclude sufficient evidence existed for the jury to find Randy knew he was not licensed or privileged to enter Joan's house. We therefore uphold Randy's conviction for criminal trespass.

III

[¶ 13] Randy argues simultaneous prosecutions for criminal trespass and violation of the disorderly conduct restraining order were for the same offense and violated the double jeopardy clauses of the state and the federal constitutions.

[¶ 14] A similar argument was made in *City of Fargo v. Hector*, 534 N.W.2d 821, 823–24 (N.D.1995), where this Court applied the "same elements" or "Blockburger" test from *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under the "same elements" test a court determines "'whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.'" *Hector*, at 823 (quoting *United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)). Importantly, in *Hector*, at 824, we

rejected defendant's argument that some of the "same evidence" used to prosecute him for exhibition driving also was used to convict him for driving under the influence. We recognized the United States Supreme Court had expressly rejected a "same evidence" test, and neither a common episode nor the same evidence determines double jeopardy. *Id.* (citing *Grady v. Corbin*, 495 U.S. 508, 512, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990)).

[¶ 15] Here, Randy was charged with two separate offenses. The criminal trespass charge required proof Randy entered or remained in a dwelling knowing he was not licensed or privileged to be in the dwelling. The violation of the disorderly conduct restraining order charge required the additional element of proof that Randy knew about the restraining order, which prohibited him from contacting Joan or being within 100 feet of her home, and he violated that order by entering her home and speaking with her. Contrary to Randy's claim, the charge for violation of the disorderly conduct restraining order involved more than Randy entering Joan's residence. The criminal information and the jury instructions confirm these additional proof requirements. Although entering Joan's house was involved factually in both crimes, the two crimes each contained an element not included in the other. We therefore conclude Randy's prosecutions for criminal trespass and for violation of the disorderly conduct restraining order did not violate the double jeopardy clauses of the state and the federal constitutions.

## IV

[¶ 16] Randy argues the district court obviously erred by failing to instruct the jury that "willful" culpability was required to prove a violation of the disorderly conduct restraining order.

[¶ 17] Randy did not object at trial to the jury instruction for violation of a disorderly conduct restraining order, and our inquiry is limited under N.D.R.Crim.P. 52(b) to whether the district court's failure to instruct the jury was obvious error affecting his substantial rights. *See State v. Olander*, 1998 ND 50, ¶ 11, 575 N.W.2d 658. This Court's authority to notice obvious error is exercised cautiously and only in exceptional circumstances in which the defendant has suffered a serious injustice. *Id.* at ¶ 12. A defendant has the burden of establishing obvious error by showing error that is plain and affects substantial rights. *Id.* at ¶ 15. An error is not obvious unless there is a "clear deviation from an applicable legal rule under current law." *Id.* at ¶ 14. A clear deviation from an applicable rule also must affect substantial rights, which requires that the defendant show the error was prejudicial, or affected the outcome of the proceedings. *Id.* at ¶ 15. Once an accused establishes an obvious error affects substantial rights, an appellate court has discretion to correct the error and should correct it if it " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at ¶ 16 (quoting *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

[¶ 18] Jury instructions must correctly and adequately advise the jury of the applicable law and must not mislead or confuse the jury. *Olander*, 1998 ND 50, ¶ 18, 575 N.W.2d 658. A person may not be convicted of a criminal offense unless each element of the offense is proven beyond a reasonable doubt. *State v. Bohl*, 317 N.W.2d 790, 792 (N.D.1982). Section 12.1–01–03(1), N.D.C.C., defines "element of an offense" to mean the forbidden act, the attendant circumstances specified in the definition and grading of the offense, the required culpability, any required re-

sult, and the nonexistence of any applicable defenses.

[¶ 19] A person is guilty of violating a disorderly conduct restraining order if the person knows about the existence of the order and violates a provision of the order. N.D.C.C. § 12.1–31.2–01(8). The district court instructed the jury on the essential elements of a violation of a disorderly conduct restraining order:

In order to prove that the defendant committed the offense of Violation of a Disorderly Conduct Restraining Order, the prosecution must prove, beyond a reasonable doubt, each of the following essential elements:

1. That the Defendant Randy Lee Bertram had knowledge of the Disorder Conduct Restraining Order;

2. That the offense was committed on or about February 8, 2004, in Williams County, North Dakota;

3. That the offense was committed by the Defendant, Randy Lee Bertram; and

4. That the defendant violated one or more provisions of the disorderly conduct restraining order, specifically that he entered the home of Joan Bertram and spoke with her.

[¶ 20] We conclude the district court's instruction on the violation of a disorderly conduct restraining order was not erroneous. The court instructed the jury on the essential elements of the offense in language tracking N.D.C.C. § 12.1–31.2–01(8), which required the State to prove beyond a reasonable doubt that Randy had knowledge of the order and that he violated one or more provisions of the order, specifically that he entered Joan's home and spoke with her. A defendant's knowledge of the order satisfies the culpability requirement for violation of a disorderly conduct restraining order, and we reject Randy's claim that the court erred in instructing the jury on the violation of a disorderly conduct restraining order.

## V

[¶ 21] Randy argues the State's failure to allege all the essential elements of contact by bodily fluids in the amended information requires reversal of that conviction. The State's amended information charged Randy with a class C felony violation of N.D.C.C. § 12.1–17–11(1)(b) and (3) for knowingly causing "blood, emesis, excrement, mucus, saliva, semen, vaginal fluid, or urine to come in contact with an employee of a correctional facility acting in the scope of employment; to wit: Randy Bertram spit on Deputy Gaylen Anderson when Deputy Anderson was acting in the scope of his duties." The information did not include the following underscored language from N.D.C.C. § 12.1–17–11(1)(b), which prohibits contact by bodily fluids with "an employee of a correctional facility or the department of corrections and rehabilitation acting in the scope of employment *unless the employee does an act within the scope of employment which requires or causes the contact.*" Randy argues the underscored language is a necessary element of the offense and was not alleged in the information. He claims the information was facially deficient and his conviction must be reversed.

[¶ 22] In pretrial proceedings, the State resisted Randy's request for an amendment to the information to include the phrase "unless the employee does an act within the scope of employment which requires or causes the contact." The district court denied the request to amend the information, but included the disputed language in its instruction on the essential elements of contact by bodily fluids. During a subsequent pretrial discussion about potential defenses, the court indicated the disputed language encompassed an essen-

tial element of the offense. In opening statements to the jury, Randy's counsel said:

In the course of complying with the orders of the guard, it was Deputy Anderson who caused any contact, if there was any, and we're not contesting that there was an incident. We're not contesting that Deputy Anderson was working that day. We're not contesting the fact that there was some type of incident between Deputy Anderson and my client, Mr. Bertram.

What we are contesting is that if there was any contact which again we submit there was not, that it was at the direct requirement and at the direct request of Deputy Anderson.

It was Deputy Anderson's demands while performing his duties that caused any of this alleged contact.

[¶ 23] An information must contain a " 'written statement of the essential elements of the offense.' " *State v. Frankfurth*, 2005 ND 167, ¶ 7, 704 N.W.2d 564 (quoting *State v. Gwyther*, 1999 ND 15, ¶ 15, 589 N.W.2d 575). In *Frankfurth*, at ¶ 7 (citing N.D.C.C. § 12.1–01–03(1)), this Court recognized the legislature has established that "elements of an offense" means (1) the forbidden conduct, (2) the attendant circumstances specified in the definition and grading of the offense, (3) the required culpability, (4) any required result, and (5) the nonexistence of a defense as to which there is evidence sufficient to give rise to a reasonable doubt on the issue. In *Frankfurth*, at ¶ 6, we said technical defects in an information are not fatal to its validity, and notice requirements are satisfied if an information is sufficiently specific to provide the defendant with notice of the pending charges to enable the defendant to prepare a defense.

[¶ 24] In *Frankfurth*, 2005 ND 167, ¶ 2, 704 N.W.2d 564, the information charged Frankfurth with gross sexual imposition under N.D.C.C. § 12.1–20–03 for allegedly engaging in a sexual act at a time when the victim was unaware that a sexual act was being committed on her. A jury returned a guilty verdict. *Frankfurth*, at ¶ 2. Frankfurth moved for arrest of judgment under N.D.R.Crim.P. 34, arguing the information failed to specifically allege his knowledge of his victim's unawareness that a sexual act was being perpetrated on her. *Frankfurth*, at ¶ 3 (citing N.D.C.C. § 12.1–20–03(1)(c)). The district court granted Frankfurth's motion for arrest of judgment, dismissing the charge without prejudice. *Frankfurth*, at ¶ 4.

[¶ 25] We concluded the information was defective because the defendant's knowledge of the victim's unawareness was a legislatively established essential element of the offense and could not be inferred from the information. *Frankfurth*, at ¶ 10. We said the defective complaint failed to charge Frankfurth with an offense and was a valid ground for arrest of judgment under N.D.R.Crim.P. 34. *Frankfurth*, at ¶¶ 18–19. We said an analysis under the obvious error provisions of N.D.R.Crim.P. 52 was not required because it would be tantamount to a repeal of N.D.R.Crim.P. 34. *Frankfurth*, at ¶¶ 24–26. A concurring opinion agreed that the district court did not err when it granted the defendant's motion for arrest of judgment, but stated this Court's decision should not preclude district courts from applying a harmless error analysis to the failure to include an essential element in an information. *Id.* at ¶ 31 (Kapsner, Justice, concurring).

[¶ 26] Section 12.1–17–11, N.D.C.C., proscribes contact by bodily fluids and provides:

1. An individual is guilty of an offense if the individual causes blood, emesis, excrement, mucus, saliva, semen,

vaginal fluid, or urine to come in contact with:

a. A law enforcement officer acting in the scope of employment;

b. An employee of a correctional facility or the department of corrections and rehabilitation acting in the scope of employment unless the employee does an act within the scope of employment which requires or causes the contact;

c. Any person lawfully present in a correctional facility who is not an inmate;

d. Any person lawfully present in the penitentiary or an affiliated facility of the penitentiary who is not an inmate; or

e. Any person who is transporting an individual who is lawfully detained.

2. Subsection 1 does not apply to a mentally ill person as defined in section 25–03.1–02 who has been detained pursuant to chapter 25–03.1.

3. The offense is a class C felony if the individual knowingly causes the contact and is a class A misdemeanor if the individual recklessly causes the contact.

[¶ 27]   Section 12.1–17–11(1)(a) and (b), N.D.C.C., both include language requiring the victim of contact by bodily fluids to be "acting in the scope of the employment," but subdivision (b) includes an additional requirement precluding criminal liability if the victim, an employee of a correctional facility or the department of corrections and rehabilitation, "does an act within the scope of employment which requires or causes the contact." In order to convict a person of contact by bodily fluids under N.D.C.C. § 12.1–17–11(1)(b) the State must prove the employee was acting in the scope of employment but did not commit "an act within the scope of employment which requires or causes the contact."

[¶ 28]   The record here shows Deputy Anderson was administering medications when contacted by Randy's saliva. In turn, the essence of Randy's defense to this charge was that if his bodily fluids came into contact with Deputy Anderson, such contact was the result of Anderson acting in the course of his employment. The omission of the omitted language from the criminal information is not a technical defect in the information and is equivalent to the nonexistence of a defense, which is a legislatively established "element of the offense" under N.D.C.C. § 12.1–01–03(1) and our decision in *Frankfurth*.

[¶ 29]   We decline, however, to expand *Frankfurth* beyond the circumstances of that case, in which the issue about the validity of the information was not raised until a post-trial motion under N.D.R.Crim.P. 34 for arrest of judgment. In that case, the State argued dismissal of the information was an inappropriate remedy because the district court did not conduct a harmless error analysis under N.D.R.Crim.P. 52. *Frankfurth*, 2005 ND 167, ¶ 20, 704 N.W.2d 564. We said an "analysis [under N.D.R.Crim.P. 52] was not required and will not be imposed by this Court as it would be tantamount to a repeal of N.D.R.Crim.P. 34." *Frankfurth*, at ¶ 26. The result in *Frankfurth* was based primarily on the interplay between N.D.R.Crim.P. 34 and N.D.R.Crim.P. 52.

[¶ 30]   Here, the issue was raised during trial, there was no timely motion under N.D.R.Crim.P. 34 for arrest of judgment, and the State claims any defect in the information was harmless error. We conclude *Frankfurth* is not controlling and a harmless error analysis is appropriate under these circumstances.

[¶ 31]   Under N.D.R.Crim.P. 52(a), "[a]ny error, defect, irregularity or variance which does not affect substantial

rights shall be disregarded." The harmless error doctrine " 'recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, ... and promotes public respect for the criminal process by focusing on the underlying fairness of the trial.' " *Neder v. United States,* 527 U.S. 1, 18, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). The harmless error doctrine " 'serve[s] a very useful purpose insofar as [it] block[s] setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial.' " *Neder,* at 19 (quoting *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). Even most constitutional errors can be harmless and do not automatically require reversal. *Neder,* at 8, 119 S.Ct. 1827.

[¶ 32] In the absence of any evidence that Randy relied on the information to his detriment or was otherwise prejudiced, we conclude the error in this case, the drafting of an insufficient charging document, is subject to a harmless error analysis. Under the circumstances of this case, we further conclude the defect in the information is harmless. A "primary purpose of a criminal complaint or information is to fairly inform the accused of the charges against him to enable him to prepare for trial." *City of West Fargo v. Hawkins,* 2000 ND 168, ¶ 8, 616 N.W.2d 856. The information in this case cited N.D.C.C. § 12.1–17–11(1)(b), the specific subsection which includes the language "unless the employee does an act within the scope of employment which requires or causes the contact." The State resisted Randy's pretrial request for an amendment to the information to include the phrase "unless the employee does an act within the scope of employment which requires or causes the contact." The district court denied Randy's request, but included that language in its instruction on the essential elements of contact by bodily fluids. During opening statements to the jury, Randy's counsel said that any contact "was at the direct requirement and at the direct request of Deputy Anderson. It was Deputy Anderson's demands while performing his duties that caused any of this alleged contact." Based on proper jury instructions that included all of the essential elements of contact by bodily fluids, a unanimous jury found Randy guilty. Randy does not argue he was misled or confused by the omission of the disputed language from the information. Moreover, on this record, any argument to that effect is not persuasive, and we conclude it would be a waste of judicial resources to retry a defendant who has not demonstrated prejudice or harm. We hold the error in the information did not affect Randy's substantial rights and is harmless.

## VI

[¶ 33] Randy argues the prosecutor's misstatement to the jury regarding the classification of the charge of contact by bodily fluids is reversible error. In the district court's opening instructions to the jury, the court correctly informed the jury that the charge for contact by bodily fluids was a class C felony. The prosecutor then read the amended information to the jury and erroneously stated the charge was a class B felony. Randy concedes his trial counsel did not object to the misstatement. He argues, however, the misstatement constitutes obvious error requiring reversal, because it imposed improper considerations upon the jury's deliberations, misinformed the jury of the seriousness of his alleged misconduct, and confused the jury.

[¶ 34] The prosecutor's statement about the classification of the charge for contact by bodily fluids appears to be have been an accidental misstatement in reading the information to the jury, *see* N.D.C.C. § 29–21–01(1), and was not repeated during trial. In its final instructions, the court instructed the jury that statements by counsel were not to be considered evidence. Randy has not demonstrated how the prosecutor's misstatement prejudiced him, or affected the outcome of the proceeding.

[¶ 35] We conclude any error was corrected by the district court's subsequent instruction that counsel's statements were not to be considered as evidence. We hold the prosecutor's misstatement did not affect Randy's substantial rights and does not rise to the level of obvious error.

## VII

[¶ 36] Randy argues the district court's failure to inform counsel in writing of a jury instruction on contact by bodily fluids violated N.D.R.Crim.P. 30(b) and constituted reversible and obvious error. During a discussion about jury instructions immediately before trial, the court decided to instruct the jury on the language from N.D.C.C. § 12.1–17–11(1)(b) that was not included in the information, and before reading the instructions to the jury, the court orally informed both counsel that it would add that language. The State argues Randy did not object to the court's procedure at trial, and there was no obvious error affecting his substantial rights.

[¶ 37] Randy asked for the instruction as part of his claim about a defective information. The court complied with his request, but the record does not establish that the court informed counsel in writing. *See* N.D.R.Crim.P. 30(b). Randy did not object to the lack of written notification about his request for the additional language, and the court orally granted his request. Randy has not demonstrated how the court's failure to provide a written notification was prejudicial, or affected the outcome of the proceeding. We conclude the procedure employed by the court did not affect Randy's substantial rights and does not rise to the level of obvious error.

## VIII

[¶ 38] Randy argues he was denied his right to effective assistance of counsel under the state and the federal constitutions at his trials for violation of a disorderly conduct restraining order and for contact by bodily fluids.

[¶ 39] Ordinarily, a claim of ineffective assistance of counsel should be resolved in a post-conviction proceeding under N.D.C.C. ch. 29–32.1, so the parties can fully develop a record on the issue of counsel's performance and its impact on the defendant's claim. *State v. Palmer*, 2002 ND 5, ¶ 12, 638 N.W.2d 18. When a claim for ineffective assistance of counsel is argued on direct appeal, we review the record to decide if the assistance of counsel was plainly defective. *Id.* Unless the record affirmatively shows ineffectiveness of constitutional dimensions, the complaining party must show some evidence in the record to support the claim. *Id.* Representations and assertions of appellate counsel are not enough to establish a claim of ineffective assistance. *Id.* To successfully claim ineffective assistance of counsel, a defendant must establish counsel's representation fell below an objective standard of reasonableness and the defendant was prejudiced by counsel's deficient performance. *Heckelsmiller v. State*, 2004 ND 191, ¶ 3, 687 N.W.2d 454.

[¶ 40] Randy argues his trial counsel was ineffective at the trial for violation of a disorderly conduct restraining order, because counsel did not object to the lack of

a culpability requirement in the instruction on the elements of violation of a disorderly conduct restraining order. Because we held above that the district court's instruction correctly informed the jury on the law for violation of a disorderly conduct restraining order, we conclude Randy's claim of ineffective assistance of counsel in that regard is without merit.

[¶ 41] Randy argues his trial counsel was ineffective at the trial for contact by bodily fluids, because (1) counsel did not object and obtain a clarifying instruction or mistrial after the prosecutor's misstatement that contact by bodily fluids was a class B felony; (2) counsel did not object to the addition of a witness in an amended information; and (3) counsel questioned Deputy Anderson about his past relationship with Randy, which Randy claims opened the door to issues about past relationships between him and law enforcement officers and precluded him from testifying at trial.

[¶ 42] On this record, we cannot conclude Randy's trial counsel's representation fell below an objective standard of reasonableness, or that Randy was prejudiced. We affirm Randy's conviction for contact by bodily fluids without prejudice to him to pursue an ineffective assistance of counsel claim at a post-conviction proceeding.

IX

[¶ 43] We affirm the convictions.

[¶ 44] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.