2007 ND 45

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Kelly FROHLICH, Defendant and Appellant.**

**No. 20060178.**

Supreme Court of North Dakota.

March 22, 2007.

Lloyd C. Suhr, Assistant State's Attorney, Bismarck, N.D., for plaintiff and appellee.

Steven Balaban, Bismarck, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Kelly Frohlich appeals the district court judgment after a jury found him guilty of attempted murder and reckless endangerment. Concluding the denial of a continuance was not an abuse of discretion and the evidence was sufficient for the jury to convict, we affirm.

I

[¶ 2] On August 25, 2005, Frohlich was arrested and charged with attempted murder after he allegedly tried to kill himself and his passenger—his seventeen-year-old girlfriend—by driving through a red light to collide with a semi tractor-trailer. Frohlich was also charged with reckless endangerment, because he did not hit the semi, but crashed into a van and injured its driver.

[¶ 3] In August 2005, Frohlich retained Ralph Vinje as counsel. On September 29, 2005, the district court held a preliminary hearing and bound Frohlich over for trial. On November 4, 2005, the district court granted Frohlich's motion for a continuance, and the trial date was changed from January 10–12, 2006, to March 7–9, 2006.

On February 17, 2006, Frohlich again moved for a continuance on the basis of his need for "some additional time to prepare for the trial of this matter." The district court denied that motion on February 27, 2006.

[¶ 4] On March 1, 2006, the district court conducted a hearing to "reconsider a motion for continuance as a result of or in conjunction therewith a motion for substitution of counsel," despite the fact that neither of Frohlich's motions alleged as a basis for the continuance a conflict of interest or the need for substitution of counsel. The hearing transcript reveals the chronology of events that ultimately caused the district court to conduct the March 1 hearing. After Frohlich retained Vinje, the passenger was charged in a drug-related juvenile matter. Vinje represented her in that matter. In the "middle of December" 2005, Vinje learned the passenger had changed her story from one protecting Frohlich to one implicating him in the attempted murder charge in this case. Frohlich learned of the passenger's recantation in January 2006 and told Vinje about his concerns of a possible conflict of interest arising from Vinje's prior representation of her. Frohlich said he began looking for substitute counsel in January 2006. Frohlich met with another attorney, Steven Balaban, in "early" February 2006. At that meeting, Balaban told Frohlich he had a scheduling conflict with the March 7, 2006, trial. Balaban advised Frohlich to seek a continuance to reschedule the trial so he could represent Frohlich.

[¶ 5] According to the district court, Balaban "informally inquired" about the need for a hearing to reconsider Frohlich's motion for a continuance, because the actual basis for the motion was not alleged—namely, Frohlich's desire for substitute counsel. The district court said it caused Balaban to schedule the March 1 hearing.

[¶ 6] At the hearing, Vinje said that he did not have a conflict of interest but that Frohlich believed a conflict did exist which would hinder Vinje's representation of him. As prospective counsel, Balaban said that because he had a scheduling conflict with the March trial date, a continuance was necessary to allow him to represent Frohlich and avoid the risk of disciplinary proceedings against Vinje. Finding no conflict that would limit Frohlich's attorney's ability to cross-examine the passenger, the district court denied the motion for a continuance; however, the court advised Frohlich and Vinje that it would allow another attorney to cross-examine the passenger. The district court also concluded the additional statutory language the State added to the charging document did not merit a continuance.

[¶ 7] At trial, Frohlich made no offer of proof regarding the alleged conflict of interest. On direct examination, the State questioned the passenger, and she admitted having lied to the police on the day of the incident. She testified she initially lied to protect Frohlich. She testified she originally told police that Frohlich wanted to kill only himself and that she had "made matters worse" by arguing with him in the car. She also admitted having lied at the September 29, 2005, preliminary hearing by testifying that the crash was an accident. She testified she had called the investigating officer after the preliminary hearing and confessed to lying. That officer testified he met with her on October 14, 2005, and she changed her story.

[¶ 8] Frohlich did not hire another attorney to cross-examine the passenger, nor did he raise the issue of the conflict of interest during the trial. The jury found Frohlich guilty of the attempted murder of his passenger and guilty of reckless endangerment of the van driver. Frohlich appeals.

[¶ 9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. This appeal is timely under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. art. VI, § 2, and N.D.C.C. § 29–28–06.

## II

[¶ 10] Frohlich contends the district court abused its discretion by failing to grant his motion for a continuance.

[¶ 11] Under the North Dakota Rules of Court, motions for continuance "will be granted only for good cause shown, either by affidavit or otherwise." N.D.R.Ct. 6.1(b). "We will not reverse a trial court's decision to deny a continuance absent an abuse of discretion." *State v. Hilgers*, 2004 ND 160, ¶ 38, 685 N.W.2d 109 (citation omitted). "A trial court abuses its discretion only when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law." *State v. Stoppleworth*, 2003 ND 137, ¶ 6, 667 N.W.2d 586.

### A

[¶ 12] Frohlich argues that because his attorney had previously represented the passenger—a victim in this case and a prosecution witness—Frohlich perceived a conflict of interest that he claims forced his attorney to refrain from a vigorous cross-examination of the passenger. He contends the district court's denial of his motion for a continuance to resolve a scheduling conflict for one particular attorney he wanted as trial counsel resulted in an unfair trial.

[¶ 13] " 'When a continuance is sought to retain or replace counsel, the right to select counsel must be carefully balanced against the public's interest in the orderly administration of justice.' " *State v. Wicks*, 1998 ND 76, ¶ 26, 576

N.W.2d 518 (quoting *Urquhart v. Lockhart*, 726 F.2d 1316, 1319 (8th Cir.1984)). In exercising its discretion, the district court may consider the time required for trial preparation and the diligence of the moving party. *Wicks*, at ¶ 27.

[¶ 14] At the March 1 hearing to reconsider the motion for the continuance, Frohlich's trial counsel said:

> I'm not alleging that I have a conflict of interest. I am alleging that because I have previously represented Ms. S–B my client has the perception—and it may be correct—that I would not cross-examine her as aggressively as I would a police officer or somebody that was otherwise a complete stranger. When I represented her, she was on his side. Now she is not on his side. She has obviously committed perjury, either in the beginning or now, and that requires a very vigorous cross-examination, and my client, Mr. Frohlich, isn't convinced I am the person to do it. And so for those reasons I think there should be a continuance.

The district court found no conflict of interest that would impede Frohlich's representation, but offered an alternative to alleviate the alleged conflict and limit the interference with Frohlich's choice of trial counsel:

> It appears to me that if Mr. Frohlich wishes to hire co-counsel for the purpose of cross-examination of a single witness that is certainly your prerogative. In this matter there has been sufficient time to prepare for trial. There has been discovery achieved. There has been disclosure. I find nothing in terms of a basis of conflict of interest such as to place Mr. Vinje in a position where he could not effectively represent you. But indeed, if you wish to have co-counsel for the purpose of cross-examination of a particular witness who Mr. Vinje has

previously represented, you are certainly entitled to do that and you are free to do so. But we'll proceed to trial as scheduled.

[¶ 15] At trial, Frohlich did not substitute counsel for the cross-examination of the passenger. The record does not reflect why Frohlich did not hire an attorney other than Balaban for the cross-examination. This record reveals little, if any, evidence of the diligence Frohlich used in securing substitute counsel.

[¶ 16] Frohlich had several weeks to find another attorney to represent him at trial, which would likely have fully resolved his perceived conflict. Frohlich said he began looking for another attorney in January 2006. The trial was scheduled for March 7, 2006.

[¶ 17] On March 1, 2006, the district court offered Frohlich the remedy of having a different attorney cross-examine the victim; however, for reasons not in the record, Frohlich did not avail himself of that remedy. On this record, the district court did not abuse its discretion by denying the continuance.

B

[¶ 18] Frohlich argues the State's "last minute" amendment to the charging document, which he claims added a new culpability level, prevented him from adequately preparing for trial.

[¶ 19] The State charged Frohlich with the attempted murder of his passenger. See N.D.C.C. §§ 12.1–06–01(1) and 12.1–16–01.

[¶ 20] The information need only "name or otherwise identify the defendant, and must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." N.D.R.Crim.P. 7(c). "For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law which the defendant is alleged to have violated." *Id.* Under Rule 7(e), N.D.R.Crim.P., "[u]nless an *additional or different offense* is charged or a substantial right of the defendant is prejudiced, the court may permit an information to be amended at any time before the verdict or finding." (Emphasis added.)

[¶ 21] "A defective information cannot be 'cured' through proper jury instruction or other means short of amendment." *State v. Frankfurth*, 2005 ND 167, ¶ 25, 704 N.W.2d 564 (citations omitted) (affirming the arrest of a judgment because the information lacked an essential element of the charged offense); *but see State v. Bertram*, 2006 ND 10, ¶¶ 29–31, 708 N.W.2d 913 (limiting *Frankfurth* to its facts and holding that because the issue of a defective information was raised during trial, harmless error analysis under N.D.R.Crim.P. 52(a) was appropriate).

[¶ 22] In this case, the State did move to amend the information. It did so on February 22, 2006, approximately one week prior to the hearing and approximately two weeks prior to trial. On March 3, 2006, the district court granted the motion. Therefore, absent any substantial prejudice to any of Frohlich's rights or the inclusion of a new or different charge, the State satisfied Rule 7(c)—rendering *Frankfurth* and *Bertram* inapposite to the facts of this case.

[¶ 23] Frohlich's argument that the State added an element or changed the culpability level for the attempted murder charge fails. This is the original charging language:

COUNT I: The defendant intentionally engaged in conduct which, in fact, constitutes a substantial step toward the commission of the crime of murder; spe-

cifically, the defendant attempted to kill A.S. by attempting to drive his vehicle into a semi truck while A.S. was a passenger.

N.D.C.C. 12.1–06–01(1)

 12.1–16–01

 12.1–32–01(2)

The amended information only added two witnesses. The second amended information added language to count one and added one more witness:

> COUNT I: The defendant, *acting with the kind of culpability otherwise required for the commission of the crime of murder*, intentionally engaged in conduct which, in fact, constitutes a substantial step toward the commission of the crime of murder; specifically, the defendant attempted to kill A.S. by attempting to drive his vehicle into a semi truck while A.S. was a passenger.

N.D.C.C. 12.1–06–01(1)

 12.1–16–01

 12.1–32–01(2)

(Emphasis added.) Our criminal attempt statute provides, in part:

> A person is guilty of criminal attempt if, acting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime. A "substantial step" is any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime. Factual or legal impossibility of committing the crime is not a defense, if the crime could have been committed had the attendant circumstances been as the actor believed them to be.

N.D.C.C. § 12.1–06–01(1).

[¶ 24] The State did not add a new element to the offense or change the offense culpability merely by reproducing the remaining statutory language of N.D.C.C. § 12.1–06–01(1). As N.D.C.C. § 12.1–06–01(1) provides, the culpability level of the substantial step conduct is always elevated to "intentionally"; therefore, regardless of the required culpability of the underlying offense of murder, the State has to prove beyond a reasonable doubt that Frohlich intentionally drove his vehicle into another vehicle to kill his passenger. All versions of the charging documents included the correct citation to section 12.1–06–01(1), N.D.C.C., criminal attempt; section 12.1–16–01, N.D.C.C., murder; and section 12.1–32–01(2), class A felonies. At all times Frohlich was on notice of the elements of the offense of attempted murder.

[¶ 25] The district court did not abuse its discretion by denying the continuance.

## III

[¶ 26] Frohlich argues the evidence was both insufficient for the jury to convict him and unduly cumulative.

### A

[¶ 27] Because Frohlich timely moved for an acquittal under N.D.R.Crim.P. 29, he preserved the issue of sufficiency of the evidence for appellate review. *State v. Steen*, 2000 ND 152, ¶ 16, 615 N.W.2d 555. When we review a challenge to the sufficiency of the evidence, we consider only the evidence and reasonable inferences most favorable to the verdict to determine whether there is sufficient evidence to warrant a conviction. *State v. Buchholz*, 2006 ND 227, ¶ 20, 723 N.W.2d 534. "A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder

could find the defendant guilty beyond a reasonable doubt." *Id.* (quotation and citation omitted). We do not weigh conflicting evidence or judge the credibility of witnesses. *Id.*

 [¶ 28] In this case, several witnesses testified about Frohlich's conduct, statements, and demeanor after the collision. Some of those witnesses' testimony is reproduced here, in part:

Officer Ryan O'Donnell: I don't recall his exact statements, but I remember specifically him saying *"kill us"* ... I asked who "us" was ... [a]nd he stated he had a passenger, which was a female that had—that was not at the scene.... Multiple times he said that.

. . . .

Officer Joe Arenz: I ... sat in the ambulance and rode in the back with one of the paramedics and Mr. Frohlich.... He was using his cell phone.... He made the statement that *he was trying to kill himself and that f\* \* \* \* \*g bitch.* ... He was *yelling into his cell phone* to whoever he was talking to.

. . . .

The State: Did you question or talk to Mr. Frohlich while you were waiting for the other officers [at the hospital]?

Officer Arenz: No, I did not.

The State: Was he making any statements during this time?

Officer Arenz: Yeah, he was.

The State: What did he say?

Officer Arenz: He was making statements about that his girlfriend ... had made him very angry and that he just couldn't take it anymore. Made statements about *just wanting to die because his life had been so miserable.*

. . . .

Paramedic Neil Frame: [H]e was on a cell phone talking to someone, I'm not sure who it was. I think he made a couple different calls, but he was real intent on using that cell phone.... But when I was trying to get information from him, he was on the cell phone and *I heard him say "I tried to kill us."* ... *Those were his exact words. And I put that in quotation marks because that's the type of thing that we want to, or that I would document.* ... Once we were enroute in the back of the ambulance enroute to the hospital asking him what was going on, his words were, *"I had snapped and I had tried to kill myself."*

The State: So he said it both ways then?

Paramedic Frame: Yup.

. . . .

Dr. Madeline Free: As [Frohlich] explained to me, his girlfriend tended to push his buttons. He indicated that he had intended to hit a semi trailer, but other events had interfered and another car pulled around the semi and he ended up hitting another vehicle. *He indicated that initially it was his intent to kill the girlfriend and himself.*

. . . .

The State: The defendant told you he had tried to hit a semi truck with the car to kill himself and his girlfriend?

Dr. Free: Mm-hmm.

The State: Did he talk about whether he had a red or green light?

Dr. Free: *He indicated that he went through a red light.*

The State: *So he was aware there was a red light and he went through it?*

Dr. Free: *Yes.*

. . . .

The State: What is your professional opinion?

Dr. Free: That *it was a deliberate calculated act.*

The State: And what is the bases [sic] for that opinion?

Dr. Free: My psychiatric evaluation at the hospital in the emergency room, the time I spent with him in the emergency room immediately following that event.

. . . .

The passenger: *I asked him where we were going? And he was looking straight ahead, both hands on the wheel, and both feet out straight, he said, "I'm going to kill us."*

. . . .

Detective Gaddis: He told me that during the interview that he got upset, snapped. He got to the stop light at the intersection—

The State: He said he "snapped," or is that you paraphrasing?

Detective Gaddis: No, *he said that he snapped* . . . He said that he got to the stop light, *he floor boarded the car and he said he was angling for the semi.* He remembered the van traveling faster than the semi, and he ended up hitting the car or the van, excuse me.

. . . .

*He talked about hitting specifically the wheels.* And also at one point of the interview he talked about hitting the bumper and specifically wanted to hit the semi, but instead of the van, *the semi was bigger and could take him out.*

(Emphasis added.)

[¶ 29] Considering the evidence and reasonable inferences most favorable to the verdict, we conclude there was sufficient evidence to sustain the conviction.

**B**

[¶ 30] Frohlich argues the district court obviously erred by allowing needless cumulative testimony. Frohlich concedes that he is raising this issue for the first time on appeal.

[¶ 31] " '[I]ssues not raised below, even constitutional issues, generally will not be addressed on appeal unless the alleged error rises to the level of obvious error under N.D.R.Crim.P. 52(b).' " *State v. Haibeck*, 2006 ND 100, ¶ 8, 714 N.W.2d 52 (quoting *State v. Parisien*, 2005 ND 152, ¶ 17, 703 N.W.2d 306). "An obvious error or defect that affects substantial rights may be considered even though it was not brought to the court's attention." N.D.R.Crim.P. 52(b).

[¶ 32] " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.D.R.Ev. 401. "All relevant evidence is admissible . . . ." N.D.R.Ev. 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or needless presentation of cumulative evidence." N.D.R.Ev. 403. Cumulative evidence is "[a]dditional evidence of the same character as existing evidence and that supports a fact established by the existing evidence (esp. that which does not need further support)." *Black's Law Dictionary* 577 (7th ed.1999).

[¶ 33] Although some of the witness testimony might have been of the same character, its probative value far outweighs any prejudice to Frohlich. In fact, it appears that some of the witnesses at the scene actually helped Frohlich's case by contradicting an investigating officer's testimony in reconstructing the accident. Considering the variety of sources, the time at which they perceived or obtained their information about Frohlich, and their differing roles in this case, the district court did not commit obvious error by allowing several witnesses to testify.

## IV

[¶ 34] We affirm the district court judgment.

[¶ 35] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.