2017 ND 205

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Ale MAJETIC, Defendant and Appellant**

**No. 20160385**

Supreme Court of North Dakota.

Filed 8/29/2017

Leah Jo Viste, Assistant State's Attorney, Fargo, ND, for plaintiff and appellee.

Richard E. Edinger, Fargo, ND, for defendant and appellant.

·Crothers, Justice.

[¶ 1] Ale Majetic appeals from a judgment entered after a jury found him guilty of two counts of gross sexual imposition. Majetic argues his right to an impartial jury was usurped when, after a 56–day continuance, the district court failed to inquire whether the jury had formed an opinion in the case or had been influenced by the media. He also argues the court abused its discretion in commenting on his expert witness's testimony. We conclude the district court did not commit obvious error, and we affirm the judgment.

I

[¶ 2] In May 2015, the State charged Majetic with two counts of gross sexual imposition, alleging that between September 1, 2011 and April 22, 2015, he was at least 22 years old and he engaged in repeated acts of sexual penetration of a minor and he also engaged in sexual contact

with another minor by shaving her genitals and other incidents of sexual contact. According to one complainant, Majetic touched her private parts and shaved her pubic hair, but she did not disclose those contacts until one year later. According to the other complainant, Majetic penetrated her vaginally and anally "more times than [she could] count" and inappropriately touched her several other times before she reported the acts in April 2015.

[¶ 3] Majetic denied engaging in sexual acts or sexual contact with the complainants and claimed they fabricated their allegations because they hated him, they did not like his methods of discipline and they wanted their mother to divorce him. He contended the complainants' medical examinations established there was no physical evidence they had been sexually abused or assaulted.

[¶ 4] After a jury was selected and sworn, and before the first recess on May 17, 2016, the district court admonished the jury:

"Okay. We're going to take a break here in just a minute to get the courtroom organized; but before we do this, I want to give you an admonition. And it's something that I'll try to remember to tell you every time we recess or end court for the day. Sometimes I may simply refer to it as 'the admonition.' And as I said, if for some reason I forget, just keep it in mind every single time that you're out of the courtroom.

Throughout the trial we will take recesses, and at the end of the day you will be going to your homes. It is vital that throughout this case you keep an open mind until you have heard all of the evidence. You must not discuss this case among yourselves, or with anyone else, until you have heard, number one, all of the evidence from both parties; the final closing arguments of the lawyers;

and, finally, the law as given to you by the court. This admonition applies during the entire course of the trial, and it especially applies when you're not in the courtroom and you go home to your daily lives."

[¶ 5] After that recess, defense counsel argued the State failed to timely disclose an expert witness who he claimed would ostensibly opine that a medical examination revealing no physical evidence of sexual abuse does not mean sexual abuse did not occur. The district court ruled the State failed to provide Majetic with proper notice about the expert, but declined to preclude the State from offering the expert's opinion and invited Majetic to contact an expert to address that evidence.

[¶ 6] The district court read preliminary instructions to the jury, which included an admonition that "[a]t each adjournment, you must not converse among yourselves, nor with anyone else, on any subject connected with the trial, and you must not form or express any opinion on this case until the case is finally submitted to you for your deliberation and decision." The parties thereafter made opening statements to the jury, and the court adjourned for the day after again admonishing the jury not to discuss the case with anyone.

[¶ 7] Before the jury heard evidence the next day, the district court granted an indefinite continuance for Majetic to procure an expert to address the expected testimony by the State's expert. The jury was instructed:

"But you should know that although you're going to be allowed to leave today, that you're still a sworn member of this jury and you cannot discuss this case with anyone. You cannot listen to any news reports or read any news accounts. You can't do any research. The same things I told you before. All of that applies until you're called back to testi-

fy—or, excuse me—called back to sit as a jury in this case. And you should try to look at your calendar to make sure that there's not going to be any conflicts within the next 30 to, I'm guessing, 45 days. And I know that's asking a lot, but I don't know any way around it. So let me give you the admonition again that it's vital that throughout this case you keep an open mind until you have heard all the evidence. You must not discuss the case amongst yourselves, or with anyone else, until you have heard all the evidence from both parties, until you've heard the final arguments of counsel, and the law as it's given to you by the Court. I'll also tell you that it's possible that there might be news stories in this case, either on the radio, television, or in print. Please do not listen to, watch, or read any such story while this trial is going on. If you happen to come across a story while we are in recess or adjourned for the evening, please change the channel or skip that page of the paper. The bottom line is that you don't want to talk to each other, or anyone else, about this thing because you want to make sure that you come in here in the same status that you are in now where you don't know anything about the case until the evidence is presented. It's just that that is going to be delayed for a period of time. So with that, the jury will be excused, and this matter will be continued on a day-to-day basis. Hopefully we'll get it tried within the next 30 days."

[¶ 8] On July 13, 2016, the district court reconvened the jury and asked the jurors:
"And one last thing. Has any juror discussed this case with anyone else since we broke on May 17th? (No response.) Okay. Thank you."
The court thereafter reread the preliminary instructions to the jury, including the admonition that at each adjournment the jurors must not converse among themselves, nor with anyone else, on any subject connected with trial, and they must not form an opinion until the case is finally submitted to them.

[¶ 9] After a noon recess that day, the following colloquy occurred outside the presence of the jury:
"THE COURT: We're in chambers. It's 2:00. All the lawyers are present, along with Mr. Majetic.

I just wanted to put on the record that as I was leaving for lunch, I ran into Clint Doeling, the bailiff who was leading the jury out for lunch, and we kind of just met in the back hallway here. I didn't talk to the jury and the jury didn't talk to me. And Clint said some of the jurors were concerned and didn't want to run into Mr. Majetic or some of his family, and I told Clint to simply check with security and find out if there is another way that they can leave if they have that concern.

So again, the jury said nothing to me. I said nothing to the jury. And I just wanted to pass that along to all the parties and put it on the record for all the parties.

Comments, Mr. Kohler?
MR. KOHLER [defense counsel]: I'll certainly communicate to the family not to converse with them in any fashion until the conclusion.
THE COURT: There was no suggestion, Mr. Majetic, that you had done anything like that or that your family had, and I didn't want to get into it in the hallway without, you know, talking with you guys first. And it seemed like an innocent enough thing, so they just said they didn't want to run into Mr. Majetic. Some of jurors wanted to avoid that. And I'll leave it as it stands.

Any further comment, Mr. Kohler?

MR. KOHLER [defense counsel]: I have nothing further, Judge. .

THE COURT: Ms. Viste?

MS. VISTE [prosecutor]: Nothing. It's a concern that people have expressed in the past, too, so it's nothing out of the ordinary.

THE COURT: Thank you. We're off the record."

[¶ 10] The State thereafter continued to present evidence to the jury. During a recess after defense counsel's cross-examination of one of the complainants, the following exchange occurred:

"THE COURT: We're back on the record. It's 3:49. The jury isn't here yet. I just got a—who wrote this? Did you Sade?

THE CLERK: I wrote that.

THE COURT: Apparently Clint, the bailiff, told Sade that a couple of the jurors are getting overwhelmed, especially due to Mr. Kohler's constant questioning. So I just wanted to let you know that that's what Clint told Sade. I wanted to put it on the record.

Any comments regarding it, Mr. Kohler? Ms. Viste?

MS. VISTE [prosecutor]: I have no comments, Your Honor.

THE COURT: Mr. Kohler?

MR. KOHLER [defense counsel]: Nothing, Judge."

After further proceedings, the jury found Majetic guilty on both counts of gross sexual imposition.

## II

[¶ 11] Majetic argues he was deprived of his right to an impartial jury because after the 56–day continuance the district court did not ask whether the jurors formed an opinion in the case or had been influenced by the media. He asserts a logical extension of the rule for admonishing a jury is that, after an extended continuance, an inquiry must be made to ensure the jury has remained impartial and has not discussed the case. He claims the court had an affirmative duty to question the jury to find out if they already formed an opinion in the case. He asserts the jury had formed an opinion because "some" members of the jury indicated they did not want to see Majetic or some of his family in the hallway, and a "couple of the jurors" were overwhelmed by defense counsel's cross-examination of one of the complainants. He asserts the only way "some" or a "couple" of jurors could have expressed these concerns was if they had discussed the case among themselves. He concedes his trial counsel did not object to these "trial irregularities," but argues they constitute obvious error affecting his substantial rights. See N.D.R.Crim.P. 52(b).

[¶ 12] "Persons accused of crimes have a right . . . to a trial by an impartial jury." State v. Newman, 2007 ND 148, ¶ 6, 738 N.W.2d 887 (quoting State v. Smaage, 547 N.W.2d 916, 919 (N.D. 1996)). During a trial, jurors are prohibited from communicating among themselves or others "on any subject connected with the trial." N.D.C.C. § 29-21-27. Under N.D.C.C. § 29-21-28 and N.D.R.Ct. 6.11(b), a court has a duty, upon each adjournment, to admonish the jury to not converse among themselves nor with anyone else on any subject connected with the trial, nor to form or express any opinion thereon, until the case is finally submitted to them. See Newman, at ¶ 7; State v. Myers, 2006 ND 242, ¶¶ 15–17, 724 N.W.2d 168.

[¶ 13] An established touchstone for an effective appeal is that an issue first must be properly raised at trial, thus allowing a district court to effectively rule on the objection. State v. Tresenriter, 2012 ND 240, ¶ 9, 823 N.W.2d 774; State v.

*Chacano*, 2012 ND 113, ¶ 6, 817 N.W.2d 369; *State v. Freed*, 1999 ND 185, ¶ 13, 599 N.W.2d 858; *State v. Moore*, 286 N.W.2d 274, 283 (N.D. 1979). A party may not later take advantage of irregularities occurring during a trial unless the party objects when they occur, allowing the court to take appropriate action, if possible, to remedy any prejudice that may result. *Tresenriter*, at ¶ 9. The reason for this rule is "obvious, for, if it were otherwise, it would behoove a defendant to sit by and invite error in the hope that if he did not prevail the first time, he would prevail upon appellate review of invited error." *Moore*, 286 N.W.2d at 283.

[¶ 14] Issues not raised in the district court generally will not be addressed on appeal unless the alleged error arises to the level of "obvious error" under N.D.R.Crim.P. 52(b). *Tresenriter*, at ¶ 12; *State v. Thompson*, 2010 ND 10, ¶ 20, 777 N.W.2d 617; *State v. Frohlich*, 2007 ND 45, ¶ 31, 729 N.W.2d 148. Rule 52(b), N.D.R.Crim.P., "provides a narrow exception to the rule that issues may not be raised for the first time on appeal, and we exercise the power to notice obvious error cautiously and only in exceptional circumstances where the defendant has suffered serious injustice." *Tresenriter*, at ¶ 12.

[¶ 15] In *State v. Olander*, 1998 ND 50, ¶ 13, 575 N.W.2d 658, this Court adopted the "obvious" or "plain" error framework from *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Under that framework, an appellate court may not notice a claimed error that was not brought to the attention of a trial court, unless there is (1) error, (2) that is plain, and (3) affects the defendant's substantial rights. *Olander*, at ¶ 14. The obvious error analysis requires a "clear" or "obvious" error, and an appellate court should not correct an error unless there is a clear deviation from an applicable legal rule under current law. *Id.* at ¶ 14. "[A] clear or obvious deviation from an applicable legal rule also must affect 'substantial rights,' that is, it must have been prejudicial, or affected the outcome of the proceeding." *Id.* at ¶ 15. Under that framework, if a defendant establishes a forfeited plain error affects substantial rights, an appellate court has discretion to correct the error and should correct it if it " 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* at ¶ 16 (quoting *Olano*, 507 U.S., at 736, 113 S.Ct. 1770).

[¶ 16] A plain or obvious error requires a clear deviation from an applicable legal rule under current law. *Tresenriter*, 2012 ND 240, ¶¶ 12–13, 823 N.W.2d 774 (concluding admission of DNA test results, if erroneous, was not clear deviation from applicable legal rule under current law); *State v. Desjarlais*, 2008 ND 13, ¶ 10, 744 N.W.2d 529 (concluding no obvious error when rule of law for charging multiple counts is not clearly established); *State v. Lee*, 2004 ND 176, ¶¶ 14–17, 687 N.W.2d 237 (concluding error, if any, in admitting 911 tape as excited utterance was not clear deviation from applicable legal rule under current law); *State v. Weaver*, 2002 ND 4, ¶ 20, 638 N.W.2d 30 (concluding instruction mirroring statutory definition of knowingly was not deviation from applicable legal rule under current law); *State v. Miller*, 2001 ND 132, ¶ 28, 631 N.W.2d 587 (concluding defendant failed to establish courtroom configuration for examination of minor victim of gross sexual imposition constituted clear deviation from applicable legal rule under current law).

[¶ 17] Here, the district court's preliminary instructions and multiple admonitions to the jury before the 56–day continuance complied with the requirements of N.D.R.Ct. 6.11(b) and N.D.C.C. § 29–21–28. When the jury was reconvened in July

2016, the question asked by the court and the lack of a response from any juror indicated the jurors had not discussed the case with anyone. The court was not required to further question the jurors.

[¶ 18] Majetic's argument that the jury was not impartial cites the jurors' statements to the bailiff to support his claim. However, this record does not establish the precise nature of the jurors' statements to the bailiff. In another context involving an obvious error analysis, this Court recognized the need for an adequate record to establish a claimed error. *See Miller*, 2001 ND 132, ¶ 26, 631 N.W.2d 587 (discussing lack of record of courtroom configuration to support confrontation clause challenge). The adversarial system requires a record of the jurors' statements to establish a claimed biased jury. The record here does not clearly indicate the jurors' statements support a claim of jury partiality; nor does it support establishing a new rule, or logically extending an existing rule, for jury admonitions.

[¶ 19] We conclude Majetic failed to establish a clear deviation from the applicable rules for admonitions or inquiries to a jury. Therefore, the district court did not commit obvious error in not conducting a further inquiry of the jury after the continuance, or in response to any jurors' statements to the bailiff.

## III

[¶ 20] Majetic argues the district court abused its discretion in commenting to the jury about the testimony of his expert witness, Dr. Steven Tredal.

[¶ 21] Carrie Simonson, the State's certified sexual assault nurse examiner, provided expert opinion testimony that the medical examinations of the two complainants were normal and showed "no residue of acute or chronic sexual abuse," and that those normal medical examinations can be both consistent and inconsistent with sexual abuse. Dr. Tredal testified as the defendant's expert regarding sexual assault medical examinations. He testified it was "troubling" and "misleading and inappropriate" from a medical perspective, as opposed to a legal determination, to say that a "normal" medical examination of a claimed victim of sexual abuse was consistent with someone who had been sexually abused. On redirect examination by defense counsel, Dr. Tredal testified:

"Q. And what are your—what is your opinion on a conclusion offered in court that these results [of a normal medical examination] are consistent with sexual abuse?

A. Well, as I've stated a couple of times, and I'll restate it because I think it is important, to state that in a way that somebody might interpret that to mean that you are offering medical support or evidence of sexual abuse would be incorrect and would be misinterpreted. You cannot state that, in my opinion. All you can say is that you have found a completely normal exam. So you cannot either support or necessarily refute that there was some form of sexual abuse. But to say that a normal exam is consistent with is misleading, in my opinion."

[¶ 22] Immediately after Dr. Tredal was excused, the district court commented:

"Okay. Let me make just one short comment. Dr. Tredal is testifying as a medical expert in this case, not a legal expert. It's a province of the Court to instruct the jury on the law and make evidentiary rulings, and the Court instructs you now that it is entirely appropriate to ask a qualified expert whether physical findings are consistent with or inconsistent with the alleged sexual assault.

I think Dr. Tredal was saying essentially the same thing. He didn't like the semantics of asking whether it's consistent with or not. But again, he's testifying as a medical expert and not as a legal expert."

[¶ 23] Majetic did not object to the district court's comment, and the court's final instructions to the jury stated that "[i]f counsel or I have made any statements or comments concerning the evidence which you find are not supported by the evidence, you should disregard them and rely on your own recollection and observation." A jury is generally presumed to follow instructions. *State v. Hernandez*, 2005 ND 214, ¶ 24, 707 N.W.2d 449.

[¶ 24] In *State v. Bilbrey*, 349 N.W.2d 1, 3–4 (N.D. 1984), this Court addressed an argument about claimed prejudice regarding a trial court's comments in admitting into evidence a defendant's exhibit in a jury trial. This Court said a trial judge:

"... should make no remarks which would show bias on his part in favor of any party to the lawsuit. Other than that, however, the trial judge is allowed great latitude and discretion in conducting the trial and, except for an obvious abuse of that discretion, his conduct of the trial will not be grounds for reversible error. The trial judge is the one who determines how the trial should be conducted. It is within his discretion to keep the trial of the case within reasonable bounds and, where counsel for the defendant was going into collateral and immaterial matters, it was within the legal discretion of the trial court to keep the questioning within bounds."

*Id.* at 4 (quoting *Haugen v. Mid–State Aviation, Inc.*, 144 N.W.2d 692, 696 (N.D. 1966)).

[¶ 25] In *Bilbrey*, 349 N.W.2d at 4, this Court concluded the district court's comment that a defendant's exhibit could potentially confuse the jury was "neither indicative of bias nor a prejudicial adverse comment on the quality of [the defendant's] evidence, but was an admonitory reminder to counsel for both parties to refrain from further incursions into collateral and immaterial matters." *See State v. Foard*, 355 N.W.2d 822, 823–24 (N.D. 1984) (stating trial judge's authority in jury and bench trials to clarify testimony and ferret out elusive facts is tempered by requirement that judge at all times remain impartial).

[¶ 26] We are not persuaded the district court's comments about Dr. Tredal's testimony are indicative of bias or a prejudicial adverse comment on the quality of Majetic's evidence. A fair reading of Dr. Tredal's entire testimony is that a normal medical examination does not establish that sexual abuse has or has not occurred. He testified a normal medical examination indicates only that the medical examination was normal. The court's comments about Dr. Tredal's testimony do not suggest his testimony should be disregarded or discredited, nor do the court's comments suggest the State's expert's testimony was more credible or should be given more weight. We conclude the court's comments do not indicate any bias, and were within the range of the court's discretion to clarify that a witness' testimony should not be interpreted as statement about the state of the law.

[¶ 27] The district court's comments about Dr. Tredal's testimony were not a clear deviation from any applicable legal rule, and were not error under the obvious error rule.

## IV

[¶ 28] We affirm the judgment.

[¶ 29] Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner, S.J.

Jerod E. Tufte

Gerald W. VandeWalle, C.J.

[¶ 30] The Honorable Jon J. Jensen was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge Carol Ronning Kapsner, sitting.