2013 ND 141

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Cody BORNER, Defendant and Appellant.**

No. 20120388.

Supreme Court of North Dakota.

Aug. 29, 2013.

Rehearing Denied Sept. 25, 2013.

Jessica J. Binder, State's Attorney, Stanton, N.D., for plaintiff and appellee.

Michael R. Hoffman, Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Cody Borner appeals the trial court's judgment of conviction after a jury found him guilty of two counts of conspiracy to commit murder. He argues the criminal information failed to charge him with the purported offense of conspiracy to commit murder. We hold that the charge of conspiracy to commit murder under N.D.C.C. §§ 12.1–06–04 and 12.1–16–01(1)(b) is not a cognizable offense. We reverse the criminal judgment.

I

[¶ 2] Borner and Richard Whitman were charged with two counts of conspiracy to commit murder. The State charged Borner and Whitman with conspiracy to commit murder under N.D.C.C. §§ 12.1–06–04, criminal conspiracy, and 12.1–16–01(1)(b), extreme indifference murder, alleging in the information Borner agreed with another to "willfully engage in or cause circumstances manifesting extreme indifference to the value of human life."

[¶ 3] At a pretrial hearing, the State requested the criminal information be

amended to specify the culpability required to conspire to commit extreme indifference murder includes "knowingly" rather than "willfully." The amended criminal information stated:

> On or about the 31st day of January, 2012, in the City of Beulah, in Mercer County, North Dakota, the above named Defendants committed the offenses of *CONSPIRACY TO COMMIT MURDER (2 COUNTS)*, in violation of *Section 12.1–06–04 and 12.1–16–01[ (1) ](b)* of the North Dakota Century Code.... *COUNT 1—CONSPIRACY TO COMMIT MURDER:*
>
> That the Defendants did then and there agree with one another to knowingly engage in or cause circumstances manifesting extreme indifference to the value of human life, and one person did an overt act, including, but not limited to, appearing at the Padilla apartment with a loaded assault rifle and loaded pistol; brandishing firearms at Michael Padilla; weapons were fired at Michael Padilla inside the residence multiple times, killing Michael Padilla; the Defendants fled the scene after the shooting and showed no deference to their victims.
>
> *Class "AA" Felony Penalty Section: 12.1–16–01(1)[,] N.D.C.C. COUNT 2— CONSPIRACY TO COMMIT MURDER:*
>
> That the Defendants did then and there agree with one another to knowingly engage in or cause circumstances manifesting extreme indifference to the value of human life, and one person did an overt act, including, but not limited to, appearing at the Padilla apartment with a loaded assault rifle and loaded pistol; brandishing firearms at Timothy Padilla; weapons were fired at Timothy Padilla inside the residence multiple times, injuring Timothy Padilla; the De-

fendants fled the scene after the shooting and showed no deference to their victims.

> *CLASS "AA" Felony Penalty Section: 12.1–16–01(1)[,] N.D.C.C.*

[¶ 4] Borner did not object to the amended criminal information. In the proposed jury instructions, the trial court included in the definition of conspiracy to commit murder that "conspiracy to commit murder requires an agreement to either cause murder or cause death." The State argued the agreement was to create circumstances manifesting an extreme indifference to the value of human life not an agreement to commit murder and an agreement to commit murder was not an essential element of the charge. Agreeing with the trial court, Borner argued an agreement to create circumstances manifesting an extreme indifference constituted conspiracy to commit reckless endangerment. Further, Borner argued under N.D.C.C. § 12.1–16–01, "there has to be the agreement to commit the murder and circumstances manifesting extreme indifference is the vehicle by which that was intended." The State also requested the definition of murder be excluded from the jury instructions.

[¶ 5] The final jury instructions defined conspiracy to commit murder as follows:

> A person is guilty of conspiracy to commit murder if the person agreed with another to knowingly engage in or cause conduct which, in fact, constitutes the offense of murder of another under circumstances manifesting extreme indifference to the value of human life, and one party to that agreement did an overt act to effect an objective of the conspiracy.

As to count 1, the jury instructions provided the State must prove beyond a reasonable doubt that Borner and Whitman "[a]greed with each other to knowingly

engage in or cause conduct constituting the offense of [m]urder under circumstances manifesting extreme indifference to the value of Michael Padilla's life." A similar instruction was given in regard to count 2 concerning Timothy Padilla. Borner did not object to the final jury instructions.

[¶ 6] At trial, after the State's case-in-chief, Whitman moved for a judgment of acquittal arguing the State failed to prove beyond a reasonable doubt the defendants agreed to commit murder. Borner concurred in the motion. The trial court denied the motion, and the jury, subsequently, found Borner guilty of both counts of conspiracy to commit murder.

## II

[¶ 7] Borner argues (1) the amended criminal information was defective because it failed to charge him with an offense, (2) the jury instructions failed to correct the defect in the amended information and inadequately advised the jury of an offense for which he could be found guilty, and (3) the evidence was insufficient to support a finding of guilt because there was no evidence that Borner knowingly agreed to willfully cause the death of any person. The dispositive issue in this case is whether the crime of conspiracy to commit extreme indifference murder is a cognizable offense under North Dakota law. In other words, if a co-conspirator agrees to create circumstances manifesting an extreme indifference to the value of human life, but does not agree to cause death, can he be charged with conspiracy to commit murder. We conclude conspiracy to commit murder requires a finding of intent to cause death and cannot be based on the theory of murder under N.D.C.C. § 12.1–16–01(1)(b), extreme indifference murder.

[¶ 8] Borner was charged with conspiracy to commit murder in violation of N.D.C.C. §§ 12.1–06–04 and 12.1–16–01(1)(b). Borner argues the State must allege he had the intent to cause death under the statutes charged. The State disagrees, arguing a defendant may be found guilty of conspiracy to commit murder if he agrees with another to engage in conduct constituting murder under circumstances manifesting an extreme indifference to the value of human life. The State argues it does not need to prove an intent to cause death. Whether conspiracy to commit extreme indifference murder is a cognizable crime is a question of statutory interpretation.

[¶ 9] Section 12.1–06–04(1), N.D.C.C., states: "A person commits conspiracy if he agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy." "Construction of a criminal statute is a question of law, fully reviewable by this Court." *State v. Laib*, 2002 ND 95, ¶ 13, 644 N.W.2d 878. The primary goal of interpreting a statute is to ascertain the legislature's intent. *Id.* We must first look to the statute's language and "give meaning and effect to every word, phrase, and sentence." *Id.; see* N.D.C.C. § 1–02–03. If a statute is susceptible to differing but rational meanings, it is ambiguous and extrinsic aids may be considered to ascertain the legislature's intent. *Laib*, at ¶ 13; *see* N.D.C.C. § 1–02–39. "We also construe criminal statutes to avoid ludicrous and absurd results." *Laib*, at ¶ 13; *see* N.D.C.C. § 1–02–38(3). Because the conspiracy statute, N.D.C.C. § 12.1–06–04(1), could be interpreted in two rational ways, we conclude it is ambiguous.

[¶ 10] In 1971, the North Dakota Legislative Assembly sought to revise the substantive criminal law in North Dakota.

H.C.R. 3050, 1971 N.D. Sess. Laws 1392. The Committee of Judiciary B, assigned to carry out the revision, used the proposed Federal Criminal Code as a model for the revised code. *Minutes of the Interim Comm. on Judiciary "B"* 28 (Jan. 24–25, 1972); *see also A Hornbook to the North Dakota Criminal Code,* 50 N.D. L.Rev. 639, 639 n. 7 (1974) [hereinafter *"Hornbook"*] (discussing the rationale for accepting the proposed Federal Criminal Code as a model for North Dakota's revised criminal code). Therefore, if the North Dakota code does not vary in substance from its federal counterpart, when confronted with a question of statutory interpretation, "we are guided by both the drafter's official comments to the proposed Federal Criminal Code and the relevant legislative history." *State v. Knowels,* 2002 ND 62, ¶ 9, 643 N.W.2d 20; *see State v. Bower,* 442 N.W.2d 438, 440 (N.D.1989); *State v. Haugen,* 392 N.W.2d 799, 804 (N.D.1986).

[¶ 11] Section 12.1–06–04, N.D.C.C., is drawn from Section 1004(1) of the proposed Federal Criminal Code. *State v. Rambousek,* 479 N.W.2d 832, 834–35 (N.D. 1992); *Hornbook,* 50 N.D. L.Rev. at 685 n. 360. In turn, the proposed Federal Criminal Code Working Papers rely on the tentative drafts to the Model Penal Code for interpretation of the intent and culpability required to commit the crime of conspiracy. *See* I *Working Papers of the Nat'l Comm'n on Reform of Federal Criminal Laws* 387–91 (1970) [hereinafter *"Working Papers"*]. To aid in the interpretation of ambiguous statutes, we may rely on "circumstances under which the statute was enacted," "legislative history," and "common law or former statutory provisions, including laws upon the same or similar subjects." N.D.C.C. § 1–02–39.

[¶ 12] Conspiracy is an inchoate crime that is completed upon an agreement and an "overt act in pursuance of the conspiracy by any party thereto." 2 Wayne R. LaFave, *Substantive Criminal Law* § 12.1(c), at 263 (2d ed.2003) (footnotes omitted) [hereinafter *"Substantive Criminal Law"*]. However, "conspiracy defies division into the classic elements of criminal act and criminal intent." *Developments in the Law: Criminal Conspiracy,* 72 Harv. L.Rev. 922, 935 (1959). "Few aspects of present conspiracy law are more productive of confusion and controversy than those surrounding the issue of intent." I *Working Papers,* at 387 (discussed in Introductory Memorandum and Excerpts from Consultant's Report on Conspiracy and Organized Crime: §§ 1004–1005). "[I]t is useful to note that there are really two intents required for the crime of conspiracy": (1) an intent to agree, and (2) "an intent to achieve a particular result which is criminal." *Substantive Criminal Law* § 12.2(c)(1) and (2), at 275–76 (footnotes omitted). In considering the intent underlying conspiracy, the official commentary to the proposed Federal Criminal Code states it is necessary to have an "intent that conduct constituting a crime be performed." *See* I *Working Papers,* at 389. Other jurisdictions require an intent to agree and an intent that the conduct constituting the crime be performed. *See People v. Swain,* 12 Cal.4th 593, 49 Cal.Rptr.2d 390, 909 P.2d 994, 997 (1996) (holding "[t]o sustain a conviction for conspiracy to commit a particular offense, the prosecution must show not only that the conspirators intended to agree *but also that they intended to commit the elements of that offense"*); *Palmer v. People,* 964 P.2d 524, 529 (Colo.1998) (holding conspiracy is a specific intent crime requiring an intent to agree and "the specific intent to cause the result of the crime to which the conspirators agreed"); *State v. Greene,* 874 A.2d 750, 770 (Conn.2005) (holding conspiracy is a specific intent crime requir-

ing an intent to agree and an *"inten[t] to commit the elements of the offense"*); *People v. Gilbert*, 183 Mich.App. 741, 455 N.W.2d 731, 735 (1990) (holding conspiracy is a specific intent crime requiring an agreement between two or more persons to perform the crime in question); *State v. Baca*, 124 N.M. 333, 950 P.2d 776, 786 (1997) (holding conspirators must intend to agree and intend to achieve a particular result).

[¶ 13] North Dakota's criminal conspiracy statute requires proof "first, that the accused agreed 'to engage in or cause conduct;' second, that this particular conduct 'in fact, constitutes an offense or offenses;' and third, that a person with whom he has agreed has done 'an overt act to effect an objective of the conspiracy.'" *Hornbook*, 50 N.D. L.Rev. at 685–86 (quoting N.D.C.C. § 12.1–06–04). Therefore, under the second prong, the agreed upon conduct must be criminal. *Hornbook*, at 686 n. 365.

[¶ 14] Here, the State alleged Borner and Whitman agreed to engage in conduct causing circumstances manifesting an extreme indifference to the value of human life. By agreeing to engage in conduct that causes circumstances manifesting an extreme indifference to the value of human life, the State argues Borner agreed to engage in conduct that constitutes the offense of murder under N.D.C.C. § 12.1–16–01(1)(b). We disagree.

[¶ 15] The Model Penal Code defines conspiracy as follows:

A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:

(a) agrees with such other person or persons that he or one or more of them will engage in conduct that constitutes such crime or an attempt or solicitation to commit such crime.

American Law Institute, *Model Penal Code and Commentaries* § 5.03, at 382 (1985) [hereinafter "Model Penal Code and Commentaries"]. Under the Model Penal Code, the requisite intent for conspiracy is explained as:

*[I]n relation to those elements of substantive crimes that consist of proscribed conduct or undesirable results of conduct, the Code requires purposeful behavior for guilt of conspiracy, regardless of the state of mind required by the definition of the substantive crime.* If the crime is defined in terms of prohibited conduct, such as the sale of narcotics, the actor's purpose must be to promote or facilitate the engaging in of such conduct by himself or another. *If it is defined in terms of a result of conduct, such as homicide, his purpose must be to promote or facilitate the production of that result.* Thus, it would not be sufficient, as it is under the attempt provision of the Code, if the actor only believed that the result would be produced but did not consciously plan or desire to produce it.

*Id.* at 407 (emphasis added). Using an example discussed in the Model Penal Code and Commentaries, one treatise explains the intent required to commit the offense of conspiracy to commit murder:

To take the example given by the Model Penal Code draftsmen, assume that two persons plan to destroy a building by detonating a bomb, though they know and believe that there are inhabitants in the building who will be killed by the explosion. If they do destroy the building and persons are killed, they are guilty of murder, but this is because murder may be committed other than with an intent-to-kill mental state. Their plan constitutes a conspiracy to destroy the building, but not a conspiracy to kill the inhabitants, for they did

not intend the latter result. *It follows, therefore, that there is no such thing as a conspiracy to commit a crime which is defined in terms of recklessly or negligently causing a result.* *Substantive Criminal Law* § 12.2(c)(2), at 278 (emphasis added) (footnotes omitted) (citing *Model Penal Code and Commentaries* § 5.03, at 408). Therefore, "when recklessness or negligence suffices for the actor's culpability with respect to a result element of a substantive crime, as for example when homicide through negligence is made criminal, there could not be a conspiracy to commit that crime." *Model Penal Code and Commentaries* § 5.03, at 408.

[¶ 16] The drafters of the proposed Federal Criminal Code and the North Dakota statute adopted amended conspiracy language. *See Final Report of the Nat'l Comm'n on Reform of Federal Criminal Laws* § 1004, at 70 (1970); N.D.C.C. § 12.1–06–04(1). The proposed Federal Criminal Code provided: "A person is guilty of conspiracy if he agrees with one or more persons to engage in or cause the performance of conduct which, in fact, constitutes a crime or crimes, and any one or more of such persons does an act to effect an objective of the conspiracy." *Final Report of the Nat'l Comm'n on Reform of Federal Criminal Laws,* at 70. The North Dakota criminal conspiracy statute provides: "A person commits conspiracy if he agrees with one or more persons to engage in or cause conduct which, in fact, constitutes an offense or offenses, and any one or more of such persons does an overt act to effect an objective of the conspiracy." N.D.C.C. § 12.1–06–04(1).

[¶ 17] The State argues it was not required to prove an intent to kill because extreme indifference murder does not require a "specific intention to cause death" and, if intent to kill is a requirement of

conspiracy to commit murder, extreme indifference murder would not be applicable under conspiracy as it would always be conspiracy to commit intentional murder. Borner argues the conspirators must agree and intend to cause the death of another. As in this case, "[c]onfusion is most likely to arise in those cases where the objective of the conspiracy, if achieved, is itself a crime, for under such circumstances the mental state for that crime must also be taken into account." *Substantive Criminal Law* § 12.2(c)(2), at 277. One scholar stated:

> [I]t is a broad rule of our Common Law that *mens rea* can be either the state of mind of the man who intends the consequences of his conduct, or the state of mind of the man who realizes what the consequences of his conduct may be and who ... is reckless or indifferent to them, that the crime of attempt requires a *mens rea* of the former kind exclusively. So it is with criminal conspiracy. *Criminal conspiracy involves a specific intent to commit a particular act, the perpetration of which the state desires to forestall.*

Albert J. Harno, *Intent in Criminal Conspiracy,* 89 U. Pa. L.Rev. 624, 635 (1941) (emphasis added) (quotation omitted). This same principle is embodied in the tentative drafts to the Model Penal Code. In discussing the inconsistencies between the intent required for conspiracy and the underlying substantive offense, the tentative drafts for the Model Penal Code state: "Under Section 5.03(1)(a)[,] it is enough that the object of the agreement is 'conduct which constitutes the crime,' thus importing the mental state required by the substantive offense, *except as to the result elements, where purpose clearly is required.*" American Law Institute, *Model Penal Code* § 5.03, at 113 (Tent. draft No. 10, 1960) (emphasis added).

[¶ 18] Extreme indifference murder is a general intent crime, not a specific intent crime. *See State v. Erickstad,* 2000 ND 202, ¶ 25, 620 N.W.2d 136. Under N.D.C.C. § 12.1–16–01(1)(b), a person does not intend to cause the death of another human-being, but rather death is a consequence of the defendant's willful conduct. *See Erickstad,* at ¶ 25. In other words, extreme indifference murder results in an unintentional death from behavior manifesting an extreme indifference to the value of human life. Conspiracy, however, requires the intent to cause a particular result that is criminal. To be guilty of conspiracy to commit murder, an individual must intend to achieve the results—causing the death of another human being. Therefore, charging a defendant with conspiracy to commit unintentional murder creates an inconsistency in the elements of conspiracy and extreme indifference murder that is logically and legally impossible to rectify. An individual cannot intend to achieve a particular offense that by its definition is unintended.

[¶ 19] For this reason, a majority of jurisdictions have held that conspiracy to commit an unintentional murder, analogous to the alleged crime in this case, is not a cognizable offense. *See Evanchyk v. Stewart,* 340 F.3d 933, 939–40 (9th Cir. 2003) (holding conspiracy to commit murder requires an intent to kill and, therefore, felony murder may not be the predicate offense for a conspiracy conviction); *United States v. Croft,* 124 F.3d 1109, 1121–22 (9th Cir.1997) (noting an "intent to kill" is an essential element of conspiracy to commit second-degree murder); *United States v. Chagra,* 807 F.2d 398, 401 (5th Cir.1986) (noting an "intent to kill" is an essential element of conspiracy to commit second-degree murder); *Swain,* 49 Cal. Rptr.2d 390, 909 P.2d at 999–1000 (holding conspiracy to commit murder under the theory of implied malice is legally impossi-

ble, as implied malice cannot "coexist with a specific intent to kill"); *Palmer,* 964 P.2d at 529–30 (holding conspiracy to commit reckless manslaughter is not a cognizable offense because "one cannot agree in advance to accomplish an unintended result"); *Greene,* 874 A.2d at 770–71 (holding reckless manslaughter in the first degree with a firearm is "defined in terms of recklessly causing a result" and "conspiracy to commit manslaughter in the first degree with a firearm is not a cognizable crime because it requires a logical impossibility, namely, that the actor agree and intend that an unintended death result" (quotation omitted)); *State v. Wilson,* 30 Kan.App.2d 498, 43 P.3d 851, 853–54 (2002) (holding conspiracy to commit felony murder is not a recognized crime because "[o]ne cannot intentionally conspire to commit a crime which only requires a mens rea of negligence or no mens rea at all"); *Gilbert,* 455 N.W.2d at 735 (holding second-degree murder may not require a specific intent to kill and, therefore, the offense of conspiracy to commit second-degree murder is nonexistent); *Baca,* 950 P.2d at 787–88 (holding a charge of conspiracy to commit depraved-mind murder is invalid because conspiracy requires an intent to commit an offense, which is inconsistent with the culpability required for depraved-mind murder); *State v. Brewton,* 173 N.C.App. 323, 618 S.E.2d 850, 857 (2005) (recognizing the holding, in *State v. Gibbs,* 335 N.C. 1, 436 S.E.2d 321 (1993), that conspiracy to commit murder requires a finding of an agreement to commit intentional murder); *but see Commonwealth v. La,* 433 Pa.Super. 432, 640 A.2d 1336, 1345 (1994) (holding "despite the fact that an individual co-conspirator did not contemplate a killing, where such killing is a natural and probable consequence of a co-conspirator's conduct, murder is not beyond the scope of the conspiracy"), *contra-*

*dicted by Commonwealth v. Clinger*, 833 A.2d 792 (Pa.Super.Ct.2003) (holding a guilty plea to conspiracy to commit third-degree murder is invalid when the defendant did not have the intent to cause death).

[¶ 20] We are persuaded by the reasoning of those courts that conclude conspiracy to commit unintentional murder creates a logical inconsistency because "one cannot agree in advance to accomplish an unintended result." *Palmer*, 964 P.2d at 529. We conclude conspiracy is a specific intent crime requiring intent to agree and intent to achieve a particular result that is criminal. Specifically, to find a person guilty of conspiracy to commit murder, the State must prove (1) an intent to agree, (2) an intent to cause death, and (3) an overt act. *See State v. Keller*, 2005 ND 86, ¶ 51, 695 N.W.2d 703. Therefore, conspiracy to commit extreme indifference murder, under N.D.C.C. §§ 12.1–06–04 and 12.1–16–01(1)(b), is not a cognizable offense.

### III

[¶ 21] Borner did not object to the criminal information or the amended criminal information. He did, however, argue at a pretrial conference the jury instructions should define conspiracy to commit murder as having, in part, an agreement to commit murder and, in his motion for acquittal, under N.D.R.Crim.P. 29, the State must prove an agreement to commit murder and that it had failed in its proof. On appeal, Borner argues the State's failure to charge an offense is obvious error.

[¶ 22] Generally, a defendant may move to arrest the judgment within fourteen days after the verdict or finding of guilt if the charging document fails to charge an offense. N.D.R.Crim.P. 34(a)(1) and (b). If a defendant fails to timely move under N.D.R.Crim.P. 34, the alleged error must be analyzed under N.D.R.Crim.P. 52(b), obvious error. *See State v. Bertram*, 2006 ND 10, ¶¶ 30–31, 708 N.W.2d 913.

[¶ 23] This Court exercises its "power to notice obvious error cautiously and only in exceptional circumstances where the accused has suffered serious injustice." *State v. Olander*, 1998 ND 50, ¶ 12, 575 N.W.2d 658. For this Court to notice a claimed error that was not raised before the trial court, the defendant must show "(1) error, (2) that is plain, and (3) affects substantial rights." *Id.* at ¶ 14. An obvious error is a deviation from an applicable legal rule. *Id.* The alleged deviation must also "affect 'substantial rights,' that is, it must have been prejudicial, or affected the outcome of the proceeding." *Id.* at ¶ 15. An obvious error "seriously affect[ing] the fairness, integrity or public reputation of judicial proceedings" may, at our discretion, be corrected. *Id.* at ¶ 16.

[¶ 24] A charge of conspiracy to commit murder requires proof the defendant intended to agree and intended to achieve a particular result that is criminal. In *State v. Keller*, 2005 ND 86, ¶ 51, 695 N.W.2d 703, our Court held: "[t]o establish conspiracy to commit murder, the State must prove an agreement to commit murder ... N.D.C.C. § 12.1–06–04(1)." Here, Borner argued, in a pretrial conference and in his N.D.R.Crim.P. 29 motion for judgment of acquittal, the State was required to prove an agreement to commit murder. The State did not allege an agreement to commit murder in the amended information. Further, the State argued it was not required to prove an intent to cause death and conceded in its appellate brief "no such evidence exist[ed]." A charging document is defective if it fails to contain a " 'written statement

of the essential elements of the offense.'" *See State v. Bertram,* 2006 ND 10, ¶ 23, 708 N.W.2d 913 (quoting *State v. Frankfurth,* 2005 ND 167, ¶ 7, 704 N.W.2d 564). The trial court obviously erred when it failed to apply this essential element of the offense of conspiracy to commit murder. Had it done so, it would have recognized the information was defective. *See Olander,* 1998 ND 50, ¶ 16, 575 N.W.2d 658.

[¶ 25] We cannot imagine a greater error affecting a defendant's substantial rights than when a defendant is convicted of conduct that is not a criminal offense under our law. The State has conceded it did not intend to prove, and no evidence existed to establish, an intent to cause death. Without this intent, the State did not charge the crime of conspiracy to commit murder. We conclude Borner was prejudiced by this error. The failure to exercise our discretion in this case would seriously affect the fairness, integrity, and public reputation of criminal jury trials. We, therefore, exercise our discretion to notice this obvious error, and we reverse the criminal judgment.

## IV

[¶ 26] We note the effect of this opinion places Borner in the same position as if no crime had been charged, because no crime was in fact charged. *See Frankfurth,* 2005 ND 167, ¶ 28, 704 N.W.2d 564 (holding "[t]he effect of an order arresting judgment is to place the defendant in the same situation in which he was before the information was filed" (quotation omitted)). Borner may be prosecuted under a new charging document as if no prior proceedings existed. *See United States v. Ball,* 163 U.S. 662, 672, 16 S.Ct. 1192, 41 L.Ed. 300 (1896) (holding a defendant who successfully obtains an indictment be set aside on appeal may be tried anew); *Montana v. Hall,* 481 U.S. 400, 404, 107 S.Ct. 1825, 95 L.Ed.2d 354 (1987) (relying on *Ball* and holding a retrial is permitted after a conviction is reversed as a result of a defective charging document).

## V

[¶ 27] Because our resolution is dispositive of the appeal, we need not reach the other issues raised by the parties. We reverse Borner's criminal judgment for conspiracy to commit murder.

[¶ 28] MARY MUEHLEN MARING, DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, concurring specially.

[¶ 29] A rule of law should not be interpreted so as to benefit or reward the wrongdoer or to shield the perpetrator. *Fischer v. Knapp,* 332 N.W.2d 76 (N.D. 1983). I believe some of the authorities relied upon by the majority engage in a hyper technical analysis of the conspiracy statute as applied to murder under the extreme indifference to the value of human life provision of our statutes. Nevertheless, I agree with the majority that the conspiracy statute and the murder statute, when read together, are ambiguous. Our Court construes ambiguous criminal statutes against the government and in favor of the accused. *State v. Brossart,* 1997 ND 119, 565 N.W.2d 752. I concur in the result reached by the majority opinion.

[¶ 30] GERALD W. VANDE WALLE, C.J.

SANDSTROM, JUSTICE, dissenting.

[¶ 31] Consistent with United States Supreme Court decisions interpreting the federal conspiracy law from which North Dakota law derives, I would affirm the conspiracy to commit murder convictions of Cody Borner and Richard Whitman.

Even if the new law announced by the majority were correct, we should affirm because the defendants, who never raised the issue in the trial court, cannot establish the necessary plain error. That is, they would have to establish that the district court failed to follow clearly established North Dakota case law, and they cannot do so.

[¶ 32] The United States Supreme Court has said the intent required for conspiracy conviction is the degree of criminal intent necessary for the underlying offense itself. Thus, when the underlying offense requires that the defendant "willfully engage in or cause circumstances manifesting extreme indifference to the value of human life" to commit murder under those circumstances, that is the intent required for conspiracy to commit the offense.

[¶ 33] An interim legislative committee worked from the Final Report of the National Commission on Reform of Federal Criminal Laws when drafting North Dakota's new criminal code, which became effective July 1, 1975. It is essential to remember that the Final Report was a proposal to change the existing federal criminal law. The convictions of Borner and Whitman are consistent with the then-existing federal criminal law. Further, the Final Report carefully identified the changes it proposed to existing federal criminal law, and it identified no change as far as the required intent is concerned.

[¶ 34] The majority looks to the Model Penal Code and decisions of some states and says more is required. But the drafters of the proposed Federal Criminal Code did not follow the Model Penal Code in this area, and, as discussed below, the majority's consideration as to other states is flawed.

[¶ 35] The majority concedes that our law on conspiracy to commit murder is ambiguous—that is, its meaning is not clearly established. This is crucial because the defendants did not object to the charge before trial, during trial, or during the seven days after the verdict, so to subsequently prevail on any challenge to the charge itself, the defendants would have to show it was contrary to clearly established case law, and they cannot do so.

[¶ 36] I, therefore, respectfully dissent.

## I

[¶ 37] In this case it was alleged and established that Borner and Whitman conspired to engage in conduct manifesting extreme indifference to the value of human life and that the result of their conduct was the death of one person and serious bodily injury to another. The State's position is that proof of the conspiracy to commit murder under these circumstances requires that the conduct be intended—an express or implied agreement to engage in the conduct—but that the result of the conduct—death—need not be intended. Murder committed by conduct manifesting extreme indifference to the value of human life requires only that the conduct be intended, not that the resulting death of anyone be intended. The majority says more is required, that the conspirators must intend that death occur. The United States Supreme Court's ruling on conspiracy cases is consistent with the State's view, not the majority's view. In affirming a conspiracy conviction, the United States Supreme Court stated:

*Our decisions establish that in order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself.* Ingram v. United States, 360 U.S. 672, 678 [79 S.Ct. 1314, 3 L.Ed.2d 1503] (1959). *See Pettibone v. United States,*

148 U.S. 197 [13 S.Ct. 542, 37 L.Ed. 419] (1893). *Respondent Feola urges upon us the proposition that the Government must show a degree of criminal intent in the conspiracy count greater than is necessary to convict for the substantive offense;* he urges that even though it is not necessary to show that he was aware of the official identity of his assaulted victims in order to find him guilty of assaulting federal officers, in violation of 18 U.S.C. § 111, the Government nonetheless must show that he was aware that his intended victims were undercover agents, if it is successfully to prosecute him for conspiring to assault federal agents. And the Court of Appeals held that the trial court's failure to charge the jury to this effect constituted plain error.

*United States v. Feola,* 420 U.S. 671, 686–87, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975) (emphasis added). In *Feola,* the underlying offense, assaulting federal officers (undercover narcotics agents) in the performance of their official duties, required intentional assault but not the intent to assault federal officers. Thus conspiracy to assault federal officers required only the agreement to the conduct of assaulting certain individuals but did not require intent of the consequences that it was federal officers who were assaulted. This supports the State's view that it is the conduct that must be intended, not the result of the conduct.

[¶ 38] In *Ingram v. United States,* 360 U.S. 672, 678, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959), the United States Supreme Court said that because the substantive offense of willful evasion of federal income taxes required a showing of knowledge that tax was due, conviction of conspiracy to commit that offense required that knowledge as well. The Court said, "Conspiracy to commit a particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself." *Id.* (quotation omitted). This supports the State's view that it is the conduct that must be intended, not the result of the conduct.

[¶ 39] The majority, at ¶ 19, cites *United States v. Chagra,* 807 F.2d 398, 401 (5th Cir.1986), for the proposition that "an 'intent to kill' is an essential element of conspiracy to commit second-degree murder." But in addition to holding that the crime of conspiracy to second degree murder exists (is a cognizable offense), the Fifth Circuit notes that under the controlling statute, "the substantive offense of second degree murder requires proof of an intentional killing with malice aforethought." *Chagra,* 807 F.2d at 401. Therefore, the offense of conspiracy to commit second degree murder requires the same state of mind, "intentional killing with malice aforethought." The Fifth Circuit held that " 'to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself.' " *Id.* (quoting *Feola,* 420 U.S. at 686, 95 S.Ct. 1255). This supports the State's view that it is the conduct that must be intended, not the result of the conduct that must be intended.

[¶ 40] The majority, at ¶ 19, cites *United States v. Croft,* 124 F.3d 1109, 1121–22 (9th Cir.1997), for the proposition that " 'intent to kill' is an essential element of conspiracy to commit second-degree murder." The case supports the proposition that "intent to kill" is necessary for conspiracy in cases in which conviction of second degree murder requires an "intent to kill." This is consistent with the State's view.

[¶ 41] In *United States v. Parker,* 165 F.Supp.2d 431 (W.D.N.Y.2001), the court said:

Where a conspiracy to commit a particular crime is charged, it is necessary to allege that the co-conspirators agreed with the same degree of criminal intent required for the object crime. *Feola*, 420 U.S. at 686, 95 S.Ct. 1255 (1975) (citing cases). Accordingly, the Supreme Court has stated that "a greater degree of intent for conspiratorial responsibility than for responsibility for the underlying substantive offense" *is not required. Id.* at 688, 95 S.Ct. 1255. Therefore, as knowledge of the government's ownership of the property alleged to have been stolen in violation of § 641 is not required, such knowledge is also irrelevant to the intent necessary to establish a conspiracy to commit such a theft in violation of 18 U.S.C. § 341 as alleged in Count II.

*Id.* at 462 (emphasis added).

[¶ 42] The court denied dismissal of a charge of conspiracy to steal government property when the defendants conspired to do the act of stealing even though they neither knew the property belonged to the government nor intended the consequence of stealing government property.

[¶ 43] The courts have said there can be conspiracy to violate an individual's civil rights when defendants intended the conduct but did not specifically intend to violate civil rights. *See, e.g., United States v. Brown*, 49 F.3d 1162, 1165 (6th Cir.1995) ("The United States need not prove that the defendant actually knew it was a constitutional right being conspired against or violated.").

## II

[¶ 44] Conspiracy is a somewhat amorphous charge with multiple definitions. Some definitions view conspiracy as occurring at a single moment, when the agreement is reached. Other definitions view conspiracy as an ongoing enterprise. Our North Dakota statute has elements of both; the crime does not happen at any single moment.

[¶ 45] The majority says, at ¶ 12:

Conspiracy is an inchoate crime that is completed upon an agreement and an "overt act in pursuance of the conspiracy by any party thereto." 2 Wayne R. LaFave, *Substantive Criminal Law* § 12.1(c), at 263 (2d ed.2003) (footnotes omitted).

This does not appear to be a complete summary of what LaFave says. LaFave does say:

But, as suggested above, *conspiracy cannot be viewed solely as an inchoate crime.* If it were, then it would hardly make sense to say that it "is an offense of the gravest character, sometimes quite outweighing, in injury to the public, the mere commission of the contemplated crime," nor would it be sensible to allow punishment for both the conspiracy and its criminal object.

2 Wayne R. LaFave, *Substantive Criminal Law* § 12.1(c), at 264 (2d ed.2003) (emphasis added). LaFave describes the other main function of conspiracy as "a sanction against group activity." *Id.* The nature of a conspiracy as an on-going, planned-out group activity makes it more dangerous than the true inchoate offenses of solicitation and attempt, and justifies liability for both the completed crime and the conspiracy.

[¶ 46] Under North Dakota law, "[a] conspiracy shall be deemed to continue until its objectives are accomplished, frustrated, or abandoned." N.D.C.C. § 12.1–06–04(3). " 'Objectives' includes escape from the scene of the crime, distribution of booty, and measures, other than silence, for concealing the crime or obstructing justice in relation to it." N.D.C.C. § 12.1–06–04(3); *State v. Coutts*, 364 N.W.2d 88,

91 (N.D.1985). Although the crime of conspiracy is complete upon agreement and an overt act in pursuance of the conspiracy, the conspiracy itself continues until "its objectives are accomplished, frustrated, or abandoned."

### III

[¶ 47] Although the majority appears to view murder as several different offenses, in North Dakota, murder is a single offense that may be committed in multiple ways. Our current law, effective in 1975, abandoned our state's previous separation into first and second degree murder and eliminated the requirement for "premeditated design" and "evincing a depraved mind." *See* N.D.C.C. ch. 12–27 (repealed effective July 1, 1975) and N.D.C.C. § 12.1–16–01; *see also A Hornbook to the North Dakota Criminal Code,* 50 N.D. L.Rev. 639, 687–89 (1974). These are important distinctions and will be discussed further in part V, *ante,* when I discuss what I believe are certain errors in the majority's analysis.

[¶ 48] Section 12.1–16–01(1), N.D.C.C., provides, in part:

A person is guilty of murder, a class AA felony, if the person:

. . . .

b. Causes the death of another human being under circumstances manifesting extreme indifference to the value of human life.

[¶ 49] The American Law Institute ("ALI"), in Tentative Draft No. 9 of the Model Penal Code under Sections 201.1–201.6, Criminal Homicide, raised the question: "Should homicides committed recklessly under circumstances manifesting extreme indifference to the value of human life be treated as murder, as was the case at common law and as the draft provides in Section 201.2(1)(b)?" *Model Penal Code* Questions on Tentative Draft No. 9 Suggested for Discussion at Annual Meeting, at xii (Tentative Draft No. 9 1959). The ALI, in section 201.2(1)(b), proposed:

Except as provided in Section 201.3(1)(b), criminal homicide constitutes murder when it is committed recklessly under circumstances manifesting extreme indifference to the value of human life.

*Model Penal Code* § 201.2 at 28 (Tentative Draft No. 9 1959). The ALI commented:

Insofar as the draft includes *within the murder category* cases of homicide caused by extreme recklessness, though without purpose to kill or even injure, it reflects both the common law and much explicit statutory treatment usually cast in terms of conduct evidencing a "depraved heart regardless of human life" or some similar words. Examples usually given include shooting into a crowd, an occupied house or an occupied automobile, though they are not of course exhaustive.

*Id.* at 29 (emphasis added) (footnotes omitted).

[¶ 50] Later, in 1970, in its Study Draft of a new Federal Criminal Code, the National Commission on Reform of Federal Criminal Laws commented:

This section provides for only a *single class of murder,* replacing the definition in 18 U.S.C. § 1111. The degree system, originally an important and useful method of discriminating between capital and non-capital murder, has broken down with the decline of capital punishment and the blurring of the distinction between the terms "deliberate and premeditated" and "intentional."

National Commission on Reform of Federal Criminal Laws, *Study Draft of a New Federal Criminal Code* § 1601 (1970) (emphasis added). The commission's proposed language abandoned the Model Pe-

nal Code's distinction between differing degrees of murder and proposed only a single murder offense with multiple subsections. Section 1601(b) of the draft provides:

A person is guilty of a Class A felony if he causes the death of another human being under circumstances manifesting extreme indifference to the value of human life.

*Id.*

[¶ 51] In 1971, the Final Report of the National Commission on Reform of Federal Criminal Laws formally adopted similar language found in the study draft in its comment to its section on murder.

This section provides for only a *single class of murder*, replacing the definition in 18 U.S.C. § 1111 . . . .

Paragraph (b), designed to cover generally all sorts of extreme recklessness of life, includes also the case often referred to as "transferred intent"; *i.e.,* where defendant intends to kill A but causes the death of B. Proof of intent to kill is sufficient manifestation of "extreme indifference to the value of human life".

*Final Report of the National Commission on Reform of Federal Criminal Laws* § 1601 cmt. at 173–74 (1971) (emphasis added). Indeed, the statutory language recommended in the commission's Final Report is substantially the same as our current murder statute:

A person is guilty of murder, a Class A felony, if he causes the death of another human being under circumstances manifesting extreme indifference to the value of human life.

*Id.* at § 1601(b).

[¶ 52] In the Borner and Whitman trials, the court gave the jury an instruction, among others, titled "CONSPIRACY TO COMMIT MURDER."

A person is guilty of conspiracy to commit murder if the person agreed with another to knowingly engage in or cause conduct which, in fact, constitutes the offense of murder of another under circumstances manifesting extreme indifference to the value of human life, and one party to that agreement did an overt act to effect an objective of the conspiracy.

[¶ 53] The history shows that the language of North Dakota's murder statute has remained substantively unchanged since 1975 and reflects that the statutory offense of murder constitutes a single offense with different ways of committing it. There is certainly a crime of conspiracy to commit murder.

## IV

[¶ 54] The linchpin of the majority's analysis is that the drafters of the proposed Federal Criminal Code followed the Model Penal Code on conspiracy. *See* majority opinion at ¶ 11. The majority is incorrect for several reasons:

- The majority cites to text in the Working Papers that does not support the proposition for which it is stated.
- The text of the proposed Federal Criminal Code language on conspiracy does not follow the language of the Model Penal Code.
- The Final Report does not rely on the Model Penal Code, although it is one of the documents considered.
- Professor LaFave notes that the proposed Federal Criminal Code differs materially from the Model Penal Code.

## A

[¶ 55] The majority says, at ¶ 11:

In turn, the proposed Federal Criminal Code Working Papers rely on the tentative drafts to the Model Penal Code for

interpretation of the intent and culpability required to commit the crime of conspiracy. *See* I *Working Papers of the Nat'l Comm'n on Reform of Federal Criminal Laws* 387–91 (1970) [hereinafter "*Working Papers* "].

But the Working Papers do not say that. (The Working Papers, Final Report, and legislative committee minutes are available at http://www.ndcourts.gov/Research/.) The cited reference shows that the Model Penal Code, the provisions of a number of state codes, and the criticism of existing federal conspiracy law were considered.

## B

[¶ 56]   The text of the proposed Federal Criminal Code language on conspiracy does not follow the language of the Model Penal Code. Model Penal Code Study Draft 10, considered by those working on the National Commission on Reform of Federal Criminal Laws, provided the following for Criminal Conspiracy:

Section 5.03. Criminal Conspiracy.

(1) *Definition of conspiracy.*   A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:

(a) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(b) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

(2) *Scope of conspiratorial relationship.* If a person guilty of conspiracy, as defined by Subsection (1) of this Section, knows that a person with whom he conspires to commit a crime has conspired with another person or persons to com-

mit the same crime, he is guilty of conspiring with such other person or persons, whether or not he knows their identity, to commit such crime.

(3) *Conspiracy with multiple criminal objectives.*   If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

(4) *Joinder and venue in conspiracy prosecutions.*

(a) Subject to the provisions of paragraph (b) of this Subsection, two or more persons charged with criminal conspiracy may be prosecuted jointly if:

(i) they are charged with conspiring with one another; or

(ii) the conspiracies alleged, whether they have the same or different parties, are so related that they constitute different aspects of a scheme of organized criminal conduct.

(b) In any joint prosecution under paragraph (a) of this Subsection:

(i) no defendant shall be charged with a conspiracy in any county [parish or district] other than one in which he entered into such conspiracy or in which an overt act pursuant to such conspiracy was done by him or by a person with whom he conspired; and

(ii) neither the liability of any defendant nor the admissibility against him of evidence of acts or declarations of another shall be enlarged by such joinder; and

(iii) the Court shall order a severance or take a special verdict as to any defendant who so requests, if it deems it necessary or appropriate to promote the fair determination of his guilt or innocence, and shall take any other proper measures to protect the fairness of the trial.

(5) *Overt act.* No person may be convicted of conspiracy to commit a crime, other than a felony of the first or second degree, unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

(6) *Renunciation of criminal purpose.* It is an affirmative defense that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a renunciation of his criminal purpose.

(7) *Duration of conspiracy.* For purposes of Section 1.07(4) [time limitations]:

(a) conspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired; and

(b) such abandonment is presumed if neither the defendant nor anyone with whom he conspired does any overt act in pursuance of the conspiracy during the applicable period of limitation; and

(c) if an individual abandons the agreement, the conspiracy is terminated as to him only if and when he advises those with whom he conspired of his abandonment or he informs the law enforcement authorities of the existence of the conspiracy and of his participation therein.

*Model Penal Code* § 5.03 at 19–22 (Tentative Draft No. 10 1960).

[¶ 57] The Study Draft of a New Federal Criminal Code (1970) differed from the above language, and the Final Report language differed even further. The criminal conspiracy provisions of the Final Report provided:

§ 1004. Criminal Conspiracy.

(1) Offense. A person is guilty of conspiracy if he agrees with one or more persons to engage in or cause the performance of conduct which, in fact, constitutes a crime or crimes, and any one or more of such persons does an act to effect an objective of the conspiracy. The agreement need not be explicit but may be implicit in the fact of collaboration or existence of other circumstances.

(2) Parties to Conspiracy. If a person knows or could expect that one with whom he agrees has agreed or will agree with another to effect the same objective, he shall be deemed to have agreed with the other, whether or not he knows the other's identity.

(3) Duration of Conspiracy. A conspiracy shall be deemed to continue until its objectives are accomplished, frustrated or abandoned. "Objectives" includes escape from the scene of the crime, distribution of booty, and measures, other than silence, for concealing the crime or obstructing justice in relation to it. A conspiracy shall be deemed to have been abandoned if no overt act to effect its objectives has been committed by any conspirator during the applicable period of limitations.

(4) Defense Precluded. It is no defense to a prosecution under this section that the person with whom such person is alleged to have conspired has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense, is immune from prosecution, or is otherwise not subject to justice.

(5) Liability as Accomplice. Accomplice liability for offenses committed in furtherance of the conspiracy is to be determined as provided in section 401.

(6) Grading. Conspiracy shall be subject to the penalties provided for attempt in section 1001(3).

(7) Jurisdiction. There is federal jurisdiction over an offense defined in this section as prescribed in section 203.

*Final Report* § 1004 at 70–71.

[¶ 58] A comparison of the language establishes that the proposed Federal Criminal Code did not follow the Model Penal Code on conspiracy. Further, the language appears to follow the case law discussed in part I, *supra.* The proposed Federal Criminal Code focuses on an agreement to engage in conduct, while the Model Penal Code appears to focus on the agreement to commit a crime.

### C

[¶ 59] The Study Draft and the Final Report reflect that the commission considered the Model Penal Code and many other sources:

The drafting process was as follows: The Commission's staff and consultants, working with law enforcement agencies, prepared preliminary drafts and supporting memoranda. These drew upon the reports of other bodies, such as the President's Commission on Law Enforcement and Administration of Justice, the National Commission on Causes and Prevention of Violence, the National Advisory Commission on Civil Disorders, the American Bar Association Project on Standards for Criminal Justice, the American Law Institute, the National Council on Crime and Delinquency and numerous state penal law revision commissions. Preliminary drafts were reviewed by the Advisory Committee and the Commission in periodic discussion meetings.

*Final Report* at xi-xii.

### D

[¶ 60] Professor LaFave in his treatise, *Substantive Criminal Law,* both the first and second editions, notes that the proposed Federal Criminal Code differs from the Model Penal Code:

Some attention is also given to the proposed new federal criminal code of 1971, as drafted by the National Commission on Reform of the Federal Criminal Laws. Although Congress failed to adopt that proposal or any other major revision of federal substantive criminal law, the Commission's work is worth noting, especially as to certain innovative proposals and also certain divergences from the Model Penal Code that have occasionally been adopted in state law reform.

1 Wayne R. LaFave, *Substantive Criminal Law,* at x n. 4 (2nd ed.2003).

### V

[¶ 61] The majority analysis reflects, I believe, several additional mistakes that merit consideration.

### A

[¶ 62] The majority writes throughout its opinion about "conspiracy to commit extreme indifference murder." But as outlined in part III, *supra,* there is only a single offense of murder in North Dakota and thus only a single crime of conspiracy to commit murder.

### B

[¶ 63] The majority, at ¶ 12, incorrectly labels the Working Papers as the official commentary to the proposed Federal Criminal Code:

In considering the intent underlying conspiracy, the official commentary to the proposed Federal Criminal Code states it is necessary to have an "intent

that conduct constituting a crime be performed." *See* I *Working Papers*, at 389. The Working Papers are not the official commentary. Comments are found in the Final Report. The Working Papers can provide additional explanations, *see Final Report* at xi, but it is also important to see, for example, whether a consultant's report was followed. As it happens, the language above from the Working Papers supports the concept that it is the *conduct*—not the *crime*—that must be intended. And it is consistent with the State's position.

## C

[¶ 64] The majority, at ¶ 19, claims "a majority of jurisdictions have held that conspiracy to commit an unintentional murder, analogous to the alleged crime in this case, is not a cognizable offense." In supporting this claim, the majority cites *several* cases, but certainly *not* a majority of jurisdictions. Many of the majority's cases, I believe, are incorrectly analyzed, as discussed below. The majority fails to consider a larger number of cases with holdings contrary to its claim. *See People v. Owens*, 131 Mich.App. 76, 84, 345 N.W.2d 904 (1983) ("Thus, the trial court erred in failing to instruct the jury on conspiracy to commit second-degree murder."); *State v. Kaakimaka*, 84 Hawai'i 280, 295, 933 P.2d 617, 632 (1997) ("[W]e hold that: (1) the statutory scheme governing the offense of conspiracy to commit second degree murder is not unconstitutionally vague. . . ."); *State v. Phillips*, 489 N.W.2d 613, 616 (S.D.1992) (indicating conspiracy to commit second degree murder is a cognizable crime); *State v. Leger*, 2004–1467, p. 23 (La.App. 3 Cir. 6/1/05); 907 So.2d 739, 756 (sufficient evidence was presented to prove conspiracy to commit second degree murder); *Leach v. Barbee*, No. W2012–00652–CCA–R3HC, 2012 WL 3966711 at *3 (Tenn.Crim.App. Sept. 11, 2012) ("Tennessee jurisprudence is replete

with references to cases in which our courts have affirmed judgments of conspiracy to commit second degree murder. Thus, petitioner's argument that conspiracy to commit second degree murder is not a cognizable offense under the Tennessee Code is meritless.") (citations omitted); *Rude v. State*, 851 P.2d 20, 26 (Wyo.1993) (upheld the district court's refusal to allow defendant to withdraw guilty plea to conspiracy to commit second degree murder); *Joseph v. Phillips*, No. 03–CV–1612 (FB), 2003 WL 22768237, at *2 (E.D.N.Y. Nov. 24, 2003) (defendant's intent to engage in conspiracy to commit second degree murder was supported by the evidence); *State v. Beaver*, 148 Wash.2d 338, 340, 60 P.3d 586, 587 (2002) (defendant pleaded guilty to conspiracy to commit second degree murder); *State v. Tollardo*, 2012–NMSC–008, ¶ 10, —— N.M. ——, 275 P.3d 110 (appellants pled guilty to conspiracy to commit second degree murder); *Santiago v. State*, No. A06–236, 2006 WL 3071390, at *3 (Minn.Ct.App. Oct. 31, 2006) (sentence for conspiracy to commit intentional second degree murder upheld); *People v. La Plant*, 670 P.2d 802, 803 (Colo.Ct.App. 1983) (conviction for conspiracy to commit second degree murder affirmed); *State v. Barrett*, 132 Ariz. 106, 106, 644 P.2d 260, 260 (Ct.App.1981) (defendant appeals his sentencing after being convicted of conspiracy to commit second degree murder); *Carver v. State*, No. CACR07–292, 2008 WL 442588, at *3 (Ark.Ct.App. Feb. 20, 2008) ("Such facts were sufficient to support his conviction for conspiracy to commit second-degree murder.").

[¶ 65] In its analysis of the claimed "intent to kill" requirement, the majority overlooks cases from states such as Pennsylvania, which has upheld conspiracy to commit second degree murder convictions when felony murder is included under the second degree murder law. Because felo-

ny murder does not require an intent to kill, the case supports the argument that intent to kill is not required for conspiracy to commit murder statutes. *Com. v. Fortune,* 305 Pa.Super. 441, 446, 451 A.2d 729, 731 (1982).

### D

[¶ 66] The majority, at ¶ 12, cites *State v. Greene,* 874 A.2d 750, 770 (Conn.2005), as "holding conspiracy is a specific intent crime requiring an intent to agree and an 'inten[t] to commit the elements of the offense.'" While this may be the correct law in Connecticut, it is specifically contrary to the federal conspiracy law from which North Dakota's current conspiracy law has evolved. The federal cases discussed above specifically reflect that conspiracy does not require intent to commit every element of the offense. *See, e.g., Feola,* 420 U.S. at 686–87, 95 S.Ct. 1255, discussed at ¶ 37 above.

### E

[¶ 67] The majority, at ¶ 12, cites *People v. Gilbert,* 183 Mich.App. 741, 455 N.W.2d 731, 735 (1990), as "holding conspiracy is a specific intent crime requiring an agreement between two or more persons to perform the crime in question." The majority does not note that a different panel of the Michigan Court of Appeals has come to a different conclusion and that the Michigan Supreme Court has declined to resolve the conflict. *Gilbert* itself notes:

> However, another panel of this Court, in *People v. Owens,* 131 Mich.App. 76, 84, 345 N.W.2d 904 (1983), vacated [on other grounds] 430 Mich. 876, 423 N.W.2d 39 (1988), held that conspiracy to commit second-degree murder was a necessarily included lesser offense of conspiracy to commit first-degree murder and therefore a trial judge is required to give an instruction regarding this lesser includ-

ed offense when a defendant is charged with conspiracy to commit first-degree murder. Our Supreme Court expressly declined to resolve the issue whether the offense exists as a lesser included offense of conspiracy to commit first-degree murder. *People v. Fernandez,* 427 Mich. 321, 342, 398 N.W.2d 311 (1986).

*People v. Gilbert,* 183 Mich.App. 741, 455 N.W.2d 731, 735 (1990).

### F

[¶ 68] The majority, at ¶ 19, cites *United States v. Croft,* 124 F.3d 1109, 1121–22 (9th Cir.1997), as "noting an 'intent to kill' is an essential element of conspiracy to commit second-degree murder." I do not see where it says this. The case was not a second degree murder case. "Sally–Anne Croft and Susan Hagan were convicted by a jury of conspiring to murder the United States Attorney for the District of Oregon, a violation of 18 U.S.C. §§ 1111, 1114, and 1117." 124 F.3d at 1113.

[¶ 69] Most of the cases cited by the majority are not inconsistent with the federal formulation that it is the intent required for the substantive offense that must be proven in a conspiracy charge. For murder in North Dakota under circumstances manifesting extreme indifference to the value of human life, it is the conduct that must be intended, not the result. In North Dakota, convictions of murder under those circumstances do not require an intent to kill. In most of the cases cited by the majority, conviction of the underlying offense required an intent to kill. Or the states follow the Model Penal Code formulation not followed in the proposed Federal Criminal Code that is followed in North Dakota. *See People v. Swain,* 12 Cal.4th 593, 49 Cal.Rptr.2d 390, 909 P.2d 994, 997 (1996) (California adopted the Model Penal Code formulation, and the underlying substantive of-

fense required "intention unlawfully to take away the life of a fellow creature.").

[¶ 70] Because of their failure to object in the trial court, the defendants would need to establish clear, obvious error. They cannot do so.

## VI

[¶ 71] "An error is not obvious unless there is a 'clear deviation from an applicable legal rule under current law.'" *State v. Bertram*, 2006 ND 10, ¶ 17, 708 N.W.2d 913 (quoting *State v. Olander*, 1998 ND 50, ¶ 14, 575 N.W.2d 658). *Bertram* has stated our general approach for finding obvious error, and one of the prerequisites for obvious error is not present here.

[¶ 72] Citing *Olander*, 1998 ND 50, ¶ 14, 575 N.W.2d 658, the majority declares, "An obvious error is a deviation from an applicable legal rule." The majority, however, fails to cite or discuss the requirement for a "clear deviation from an applicable legal rule under current law." *Bertram*, 2006 ND 10, ¶ 17, 708 N.W.2d 913 (quoting *Olander*, at ¶ 14 ("[A]n appellate court should not correct an error unless there is a clear deviation from an applicable legal rule under current law.")). Review for obvious error is significantly different under the requirement for a clear deviation from an applicable legal rule under current law. Were the majority to include the exact standard from *Bertram* and *Olander*, its decision would not be persuasive.

[¶ 73] If we use the language describing the correct standard, our holding must change. There is no clear deviation from an applicable legal rule under current law here, because the law of conspiracy is not clearly established. Obvious error is a difficult standard to overcome, and this Court usually fails to find a clear deviation from an applicable legal rule under current law.

As we have previously noted, N.D.R.Crim.P. 52(b) provides a narrow exception to the rule that issues may not be raised for the first time on appeal, and we exercise the power to notice obvious error cautiously and only when the defendant has suffered serious injustice.... There is no obvious error when an applicable rule of law is not clearly established.

*State v. Tresenriter*, 2012 ND 240, ¶ 16, 823 N.W.2d 774 (failing to find obvious error when no North Dakota statute or case law was cited that clearly required consolidation of offenses under these circumstances) (citations omitted).

[¶ 74] In *State v. Lee*, this Court also failed to find obvious error, holding that "the error, if it was error, alleged by Lee was not an obvious error under N.D.R.Crim.P. 52(b), because it was not in conflict with applicable legal rule under current law." *State v. Lee*, 2004 ND 176, ¶ 17, 687 N.W.2d 237 (finding no obvious error in admitting a 911 tape when the North Dakota Rules of Evidence do not require a witness to be unavailable). This Court also did not find obvious error in *State v. Miller*, holding,

Miller has failed to cite a single case holding that a reconfiguration of the courtroom which does not physically obstruct the defendant and witness's view of each other violates the Confrontation Clause, requires a *Craig* hearing, or requires a cautionary instruction. Under these circumstances, Miller has failed to demonstrate that the procedure employed in this case constituted a clear deviation from an applicable legal rule under current law.

*State v. Miller*, 2001 ND 132, ¶ 28, 631 N.W.2d 587.

[¶ 75] Likewise, the majority has failed to cite a single North Dakota case holding

that conspiracy to commit extreme indifference murder is not a cognizable offense. It would be difficult to conclude the law on this matter is clear when the majority interprets North Dakota conspiracy law in a way we have never interpreted it before.

[¶ 76] The United States Supreme Court has similarly articulated the burden for plain error or obvious error. In *United States v. Olano*, it said:

> The second limitation on appellate authority under Rule 52(b) is that the error be "plain." "Plain" is synonymous with "clear" or, equivalently, "obvious." See [*United States v.*] *Young, supra*, [470 U.S. 1,] 17, n. 14 [105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)]; *United States v. Frady*, 456 U.S. 152, 163 [102 S.Ct. 1584, 71 L.Ed.2d 816] (1982). *We need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified.* At a minimum, a court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law.

*United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (emphasis added). In *United States v. Frady*, the United States Supreme Court explained:

> Rule 52(b) was intended to afford a means for the prompt redress of miscarriages of justice. *By its terms, recourse may be had to the Rule only on appeal from a trial infected with error so "plain" the trial judge and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it.* The Rule thus reflects a careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed.

*United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (emphasis added) (footnotes omitted).

[¶ 77] We have repeatedly refused to find obvious error when the law is unclear on a particular matter. Our decisions create an extremely high burden for reversal. As such, reversal is unwarranted in this case, because North Dakota's conspiracy law is in no way clearly established. I would hold the district court committed no obvious error.

## VII

[¶ 78] There is no obvious injustice. The majority says there is no greater injustice than convicting someone of conduct that is not an offense. Conspiracy to commit murder is certainly a crime in North Dakota. The conduct established—indeed the conduct admitted by the defendants— is an offense, a very serious offense. The conduct admitted by the defendants meets the definition of murder because death occurred while the defendants were committing armed robbery. By their own testimony, they either explicitly or implicitly conspired to commit the felony robbery that resulted in death. There is no previously established, clear North Dakota law that conspiracy to commit murder under these circumstances is not an offense. The district court committed no obvious error.

## VIII

[¶ 79] I would affirm the judgment in this case as well as in the case of Borner's co-defendant Whitman.

[¶ 80] DALE V. SANDSTROM.